WILLIAM O. TUGGLE, executor, plaintiff in error, *vs.* THE MAYOR AND COUNCIL OF ATLANTA, defendants in error.

1. The erection of an extensive iron bridge in lieu of a wooden one, on a street, over a wide railroad cut, is an important improvement, beneficial to the public, and justifying the disuse of the street at the point to be bridged, for a length of time discretionary with the municipal authorities, so that their discretion be not grossly abused.

2. The new bridge being one hundred and forty feet in length, sixty feet wide, and costing $14,000 00, there was no abuse of discretion in allowing the chasm in the street to remain unbridged for four months after the wooden bridge was removed, and in consuming that much time in having the new bridge put in its place.

3. An adjacent property-holder whose rents were diminished twenty-five per cent. during the time the bridge was down, has no cause of action against the city for damages.

Municipal corporations. Roads and bridges. Damages. Before Judge HOPKINS. Fulton Superior Court. October Term, 1875.

James H. Callaway, the testator of plaintiff in error, brought an action for damages against the Mayor and Council of Atlanta, making, in brief, the following case: Plaintiff is the owner of certain stores on Broad street. Within about sixty or seventy feet thereof is a railroad cut, across which was formerly a wooden bridge, forming a part of the street. On August 12th, 1873,

the city council entered into an agreement with the Wrought Iron Bridge Company of Canton, Ohio, by which the latter was to replace said wooden bridge with an iron one of the following description : Length one hundred and forty feet, width sixty feet, cost $14,000 00 ; the work to be completed by December 1st, 1873. (A copy of the agreement, bond, etc., was attached to the declaration.) Early in November defendant had the wooden bridge torn down. The materials for the new structure did not arrive until March, 1874, and during the period of this unreasonable delay the street remained impassable. Plaintiff's tenants notified him that their business was damaged by such delay, and that they would not remain unless plaintiff reduced their rents, which he was compelled to do to the extent of twenty-five per cent. thereof. On February 27th, 1874, he presented a petition to the defendant, reciting these facts, and asking that he be reimbursed the amount of rent he had lost by such delay. This petition the defendant refused to consider, thereby causing him the expense of employing counsel and seeking his legal remedy.

Defendant demurred to the above declaration. The demurrer was sustained, and the plaintiff excepted. ⟍

JULIUS L. BROWN; A. W. HAMMOND & SON, for plaintiff in error.

W. T. NEWMAN, for defendant.

BLECKLEY, Judge.

This action seems to us to be founded on a misconception of the character and functions of municipal government. It ignores the mayor and council as agents of thought and treats them as agents of work only. It virtually denies them power to plan and manage, and grants but the power to execute. It seeks to set up courts and juries as their overseers, and to make the mode, if not the time, of effecting public improvements conform to opinion in the jury box, rather than to opinion in the council chamber. Whether a bridge of iron shall

be substituted for a bridge of wood is discretionary with the mayor and council. When and in what manner it shall be done, (so that no unlawful means be used) are alike discretionary. For the sake of a great, permanent improvement, such as an iron bridge, it is not unlawful to withdraw temporarily from use the part of the street where it is to be erected. Such a measure may, in the judgment of the mayor and council, be expedient as one of the means to accomplish the work most cheaply and expeditiously. How the public shall be excluded, whether by nailing up the old bridge or removing it, is as much a question of discretion as any other involved in the proceeding. And of the same nature is the further question of how long the exclusion shall operate? Is it for the interest of the city, considering the state of its finances, the labor and materials at command, the location and business of the street, and all else that should be taken into account, for the work to proceed with more or less dispatch? Who, besides the official guardians of the city, can decide? These officials are the people's agents, and if they abuse their trust the people will generally apply the corrective at the ballot-box. If the official discretion be grossly abused, and an individual citizen be specially damaged thereby, he would doubtless be entitled to his action for redress. But here there is no gross abuse of discretion alleged, and none is apparent on the face of the declaration. The averment that the bridge was kept down an unreasonable length of time, is not sufficient without setting out the facts on which the mayor and council exercised their discretion, so that the court may see that there was wantonness or gross folly in taking down the old bridge so early, or in not supplying its place sooner with the new bridge, or with some temporary structure. The declaration proceeds upon the theory that it was the duty of the authorities to go on with the work as expeditiously as they could. On the contrary, it was their duty to go on with it as expeditiously as they, in the exercise of a reasonable discretion, *thought* they could. A prudent proprietor will not always erect a building, however much needed, in the shortest

time he can.  He is faithful to his own interest when he makes the utmost expedition that he deems compatible with his circumstances.  The guardians of a city have as much latitude in the conduct of municipal improvements, legitimately undertaken, as prudent persons ought to allow themselves in the management of their own affairs.  It is a mistake to suppose that a citizen can present a balance-sheet at the city treasury, and get his losses cashed whenever the improvements in his neighborhood do not go forward as rapidly as they might, or in the best possible manner.  It is not unlikely that property like the plaintiff's, in the immediate vicinity of this iron bridge, will be permanently benefited by its erection very much more than property more remote from it on the same street, or on other streets in the city.  From wood to iron in public bridges is great progress.  The four months consumed in making the change may suffice for a century.  Interruptions in the use of the street for repairs or renewals of the wooden bridge might have amounted to much more than that in the fourth of a century, even with the utmost care, and economy of time.  People must submit to some temporary inconvenience for the sake of great works that are to stand as future monuments of the enterprise and public spirit of the age.  In no other way can the world advance.  It is quite too contracted a view of this case to attempt to govern it by the law of nuisance.

Judgment affirmed.