ADAIR *et al.* v. CITY OF ATLANTA *et al.,* and *vice versa.*

1. A city may, in the proper exercise of its discretion, and as a movement in the direction of public improvement, build a bridge in one of its streets, and, incidentally, close the street during the reasonable duration of the work.  In like manner, the municipal authorities may authorize a railroad company to build the bridge for the benefit of the city, giving it power to close the street for a reasonable time while the work is being done.

2. Where the fee to a street is in the abutting-lot owners, and excavations are made in the street and a bridge erected thereover, the surface of the street underneath the bridge may be used by the owners of the fee in any manner not inconsistent with the right of the public.  .

3. The order amendatory of the original judgment denying an injunction was unnecessary, but will not require a reversal of the judgment.

Argued October 3,—Decided November 13, 1905.

Petition for injunction.  Before Judge Pendleton.  Fulton superior court.  June 14, 1905.

*Rosser & Brandon* and *John L. Hopkins & Sons,* for plaintiffs.

*Dorsey, Brewster & Howell, James L. Mayson,* and *William P. Hill,* for defendants.

CANDLER, J.  On Nelson street, in the City of Atlanta, is a bridge, owned and maintained by the city, over numerous tracks of the Southern Railway Company and other railroad corporations. The approach to this bridge on the east over Nelson street from the corner of Nelson street and Madison avenue, is a gradual rise for a distance of several hundred feet, the street at the beginning of the bridge being about thirty feet above the level of the railroad right of way.  The land on both sides of Nelson street, between Madison avenue and the bridge, is owned by the Southern Railway Company.  It is the purpose of the company to erect freight terminals on this land.  An agreement was made between the Southern Railway Company and the municipal authorities of the City of Atlanta, the substantial effect of which was that the railroad company bound itself to construct for the city a metal viaduct on Nelson

street, beginning at Madison avenue and extending over its right
of way to a point a short distance west of the western end of the
present bridge, to hold the city harmless on account of any damage
that might arise out of the construction of the viaduct, and to
perpetually maintain and keep the viaduct in repair when con-
structed, without expense to the city. It also agreed that the work
should be completed within nine months, during which time the city
agreed that Nelson street between Madison avenue and Elliott street
(the western terminus of the proposed viaduct) should be closed to
travel. Though it was not expressed in the written agreement be-
tween the city and the railroad company, it is admitted that there
was also a stipulation, or understanding, that the present grade of
Nelson street should be lowered to the level of the railroad right of
way, it being proposed to build the viaduct on the present street
level, and to allow the railroad company to build its terminals under
the viaduct and on the level of the street as lowered. At the west-
ern end of the present bridge Nelson street turns sharply to the
south for a distance of 255 feet, running during that distance
directly alongside the railroad right of way. It then turns obliquely
and continues in a general westerly direction. At this latter turn-
ing-point in the street is situated a lot owned by the Adair estate,
one of the plaintiffs in the court below. The lot is a triangle, its
longest side abutting on the railroad right of way. Some distance
west of the Adair property, on Nelson street, is that of Mrs. Mynatt,
the other plaintiff. The present suit was brought by Adair and
Mrs. Mynatt against the city and the Southern Railway Company,
to enjoin the performance of the contract already referred to, to
prevent the closing of Nelson street, and to prevent the digging
down of the present Nelson street grade and the erection thereon
of the railroad freight terminals. By amendment the Central of
Georgia Railway Company was made a party defendant to the ac-
tion. The petitioners alleged that the contract was without author-
ity of law, and claimed that they would be damaged by reason of
the fact that communication between their property and the busi-
ness portion of the city of Atlanta would be cut off, and that the
value of their property would be lessened by the erection of the pro-
posed freight terminals. At the hearing an injunction was denied,
but on the day following the rendition of the judgment the court
passed the following order: "The judgment heretofore rendered

in the above-stated case, . . denying the injunction prayed for, is amended as follows: The court found, upon the evidence introduced, that the two petitioners each suffered a special injury, differing in kind from that sustained by the general public." The plaintiffs excepted to the denial of an injunction, and the defendants filed a cross-bill of exceptions, in which they complained of the supplemental order purporting to amend the judgment as originally rendered.

1. It was conceded that the present Nelson street bridge is sufficient for the needs of the city to-day. It was shown that it is necessary, however, for the city to make occasional repairs upon it in order to keep it in reasonably safe condition for the requirements of public travel; and that the proposed viaduct, which, under the terms of the contract, is to be kept in repair without expense to the city, will be a much more substantial structure, and better suited to the probable future needs of the city. Indeed there was abundant evidence to the effect that the proposed viaduct will be in the nature of a very great public improvement. It will hardly be doubted that the city, under these circumstances, would have had the right to build such a viaduct itself, and to close the street to travel for a reasonable time for that purpose, provided always that the discretion given it by law in the management of its affairs was not abused. *Tuggle* v. *Atlanta,* 57 *Ga.* 114. This being so, we can conceive of no reason why the city may not also, in the exercise of that discretion, grant authority for the work to be done by a railroad or other corporation, or indeed by an individual. The city, of course, can act only through agents. Ordinarily in building a bridge it would necessarily let the work to a contractor. No reason occurs to us why, in selecting an agent for the work, it may not choose a railroad corporation rather than a corporation or an individual whose regular business is that of building bridges; and the fact that in doing so the city makes an unusually good trade, securing a modern structure free of cost and the necessity to keep it in future repair, furnishes no argument why the bridge should not be built in this manner, or why the street may not be closed during its construction. In the present case there was no contention that nine months would be an unreasonable length of time to take for the building of a bridge or viaduct of the character of the one proposed, or that there will be any abuse of discretion on the part of the city or its agents in the

manner of doing the work. The fact that the Southern Railway Company is a foreign corporation and has no power of eminent domain does not, of course, affect the situation; for, as already pointed out, the work is to be done, in effect, by the city through the railroad company as its agent. We are clear that the city had the power to close the street.

2. We come now to consider whether or not the city may, as an incident to the work of building the new Nelson street viaduct, and, as part of the consideration for the work to be done and kept in repair by the railroad company, allow that company to excavate the street from its present level to the level of the company's right of way, and erect thereon buildings which are to be a part of its proposed freight terminals. In making this question, of course, the plaintiffs have no standing in court as taxpayers or members of the public, but it is necessary for them to allege and prove special damage to themselves growing out of the alleged illegal transaction. *Coast Line R. Co.* v. *Cohen,* 50 *Ga.* 451; *Coker* v. *Railway Co.,* 123 *Ga.* 483. Indeed this entire suit is predicated upon an injury to the property rights of the plaintiffs. How the erection of buildings on this little strip of ground, many hundred feet removed from the plaintiffs' land, can affect the value of that land injuriously is somewhat difficult to understand; but there is evidence in the record from which such an inference could be drawn, and the question must therefore be decided. It will be borne in mind that the railroad company owns the property on both sides of Nelson street at the point where the excavations are in contemplation, and that presumptively it owns the fee to the entire street at that point, subject always to the public right to its use as a highway. It will also be borne in mind that at the present Nelson street bridge the street runs into a sort of cul de sac, being at that point some thirty feet higher than the level of the railroad right of way, so that for the block between Madison avenue and the present bridge the space beneath the surface of the street is entirely useless to the city for water or sewer pipes, or for any other conceivable municipal purpose. It will hardly be contended that the city would not ordinarily have the right to excavate its streets and build bridges across the chasm caused thereby, if, on account of the peculiar topography of the surroundings, and in the wise exercise of the discretion vested in it, it was deemed necessary or prudent. Is it, then, necessary that the

surface ground under the bridge must forever remain idle for any purpose whatever? We think the true answer to be that the fee would remain just where it had been all along, and that the rule applicable to it would be in no wise different from the rule governing all public highways, viz., that the abutting property-owners could put it to any use not inconsistent with its use as a public highway. Under the proposed arrangement between the city and the railroad company the latter will get only what it already has—the right to use its fee in the street in a manner not inconsistent with the right of the public to a highway.

The case of *Coker* v. *Railway Company,* 123 *Ga.* 483, is not in any sense in conflict with what is here ruled. There it was proposed virtually to abandon a street and close it for all time to the public. For a brief time a substitute was to be provided in the form of an improvised parallel street which was to furnish an outlet for the travel which would have gone over the street which it was proposed to close, but the agreement between the city and the railroad company contemplated that eventually the new street should be given back to the railroad company, while no substitute was provided to take its place. It was held that the power to "open, lay out, to widen, straighten, or otherwise change" streets contained in the city's charter did not comprehend the power to make the changes indicated. Here there is no question of abandoning a street or of changing its course. The public will have the same thoroughfare open to it that it has to-day. Its convenience will not be lessened, nor the distance one will have to go between any two points increased in the slightest degree by the proposed improvement. The only difference will be that instead of going over a dirt surface it will pass over a metal viaduct. The case of *Hanbury* v. *Woodward Lumber Co.,* 98 *Ga.* 54, is very closely in point, if it is not controlling of the question now under discussion. It was there held that where, as in the present case, the fee to a street was in the abutting-lot owners, the municipal corporation holding only an easement as for a right of way, "the municipal corporation may, with or without express statutory authority, in the exercise of its general discretion touching the control of the public ways, permit the owner of the fee to appropriate to his own private personal use that portion of the land covered by such street which is opposite to his abutting lots; provided such use be not inconsist-

ent with the reasonable exercise upon the part of the public of its concurrent right of way." Counsel for the plaintiffs sought to distinguish the *Hanbury* case from the case at bar, but the distinction drawn is one of fact only; in principle there is none.

3. There remains to be considered only the question raised by the cross-bill of exceptions, viz., whether the court erred in passing the order seeking to amend the original judgment by an adjudication that the plaintiffs would suffer special damages not shared by the general public. Construing the order in the light of the judgment denying an injunction, and of the evidence introduced on the trial, we think it is clear that the trial judge intended to go on record as saying that in his opinion the plaintiffs would, on account of the contemplated nine months' obstruction of Nelson street, suffer special damages of a temporary character, which, however, were not of sufficient seriousness or importance to warrant the grant of an injunction. It would probably have been best had this expression on a pure question of fact been omitted, as it had no material bearing on the case as decided. As the case in its present form, however, will not reach the jury, this expression in the order can have no influence upon its subsequent determination; and for this reason the judgment on the cross-bill will not be reversed. See *Wardens* v. *Savannah,* 69 *Ga.* 749; *Bleyer* v. *Blum,* 70 *Ga.* 559. In view of the ruling announced in the first division of this opinion, and of the decision of this court in *Tuggle* v. *Atlanta,* 57 *Ga.* 114, it would seem to be immaterial whether special damage of this sort be suffered or not.

*Judgment on both bills of exceptions affirmed. All the Justices concur, except Cobb, P. J., disqualified.*