## PATTON *et al. v.* CITY OF ROME *et al.*

1. Under legislative authority granted to a municipality in its charter to "open, lay out, to widen, straighten, or to otherwise change streets, alleys, and squares in said city," the city may vacate and sell to an abutting-land owner, a private individual, a strip or part of a street, which strip will be thereafter closed to the use of the public, where it appears that the selling and closing of the strip or tract will have the effect to straighten and make more uniform in width the street from which the tract is taken and sold, without having the effect to close or prevent the free use by the public of said street.

2. A contract upon the part of a municipality to sell the strip or part of the street to a private individual, as set out in the preceding headnote, is not an ultra vires act; and the court below did not err in refusing to enjoin the city from proceeding to consummate the sale.

3. Having legally exercised the power to change the street, it was the duty of the mayor and council to appoint assessors under that section of the charter which provides that "whenever the said mayor and council shall exercise the power above delegated," that is the power and authority to open, lay out, widen, straighten, or otherwise change streets, "they shall appoint two freeholders, and the owners of said lots fronting on the said streets or alleys shall, on five days' notice, appoint two freeholders, who shall proceed to assess the damages sustained or the advantages desired [derived?] by the owner or owners of said lots, in consequence of the opening, widening, straightening, or otherwise changing said streets or alleys."

Argued October 19,—Decided December 21, 1905.

Petition for injunction. Before Judge Wright. Floyd superior court. June 10, 1905.

Mrs. Ida N. Patton, Mrs. Mary M. Brumby, and James B. Nevin, as executrices and executor of the estate of Helen A. Nevin, deceased, and individually as citizens, taxpayers, and lot owners, sought to enjoin the City of Rome from selling to E. J. and J. Henderson Lanham a strip of land, thirty feet wide by one hundred and thirty-two feet in length, off the eastern side of North Fourth avenue in said city, in which petitioners claimed, as representatives of the estate and as individuals, general interest as citizens and taxpayers and special interest as abutting-lot owners, the city having agreed to sell said strip to the Lanhams in order that they might close the same and erect thereon a three-story brick building, claiming power and authority so to do under and by virtue of its charter. The language of that section of its charter under which the city is proceeding to sell the strip is as follows: "That the said mayor and council shall have full power and authority to open, lay out, to

widen, straighten, or to otherwise change streets, alleys, and squares in the said City of Rome. Whenever the said mayor and council shall exercise the power above delegated, they shall appoint two freeholders, and the owners of said lots fronting on the said streets or alleys shall, on five days' notice, appoint two freeholders, who shall proceed to assess the damages sustained or the advantages desired [derived?] by the owner or owners of said lots, in consequence of the opening, widening, straightening, or otherwise changing said streets or alleys; and in case said assessors can not agree, they shall select a fifth freeholder; the said assessors to take an oath that they will faithfully discharge their duties; and each party to have the right to enter an appeal to the superior court of Floyd county within ten days of the rendition of said award; *provided,* if any property-owner shall fail after notification to appoint assessors by the time prescribed, then the two assessors appointed by the city shall proceed to make the assessment, and in the event they shall fail to agree they shall call in a third freeholder, who shall be sworn and act with them, and the finding of the majority shall stand as the award, unless appeal be entered as provided for in this section." (Acts 1882-3, p. 438.) In their petition the plaintiffs allege, that as representatives of the said estate they are the owners of property on the western side of North Fourth avenue, across the street from the aforementioned strip, and that if the city be allowed to sell the strip their property will be greatly damaged; that the street at this point has been ninety-five feet wide for fifty years; that the Lanhams have announced their intention to build thereon the three-story brick building aforementioned, which, taking into consideration the fact that the street would then be but sixty-five feet in width, would greatly mar the enjoyment of petitioners' property, "cutting off light and air,  .   . obstructing the view, and taking away, to that extent, petitioners' right of ingress and egress;" and that petitioners and those under whom they claim have been in possession of the property for more than fifty years. Petitioners insist, that the charter of the City of Rome gives "no authority to close any part of said street, no authority to sell any part of this street, and that only by express legislative authority can such action be had;" that there is no claim that said strip is no longer useful or convenient to the public, but "the same is being done solely for the benefit of private individuals, to wit, the proposed

grantees," and that such proposed action by the mayor and council is an injury to petitioners and a gross abuse of power; that the injuries threatened are irreparable and can not be easily computed in damages, and that they have no sufficient remedy at law; wherefore they pray, that the city be enjoined from proceeding further "in this attempted disposition of said part of Fourth avenue," that the Lanhams be enjoined from erecting any building on said tract of land or otherwise obstructing the same, and that the freeholders (Brett and Wilkerson) whom it was alleged the city had appointed as assessors to determine what damage would be sustained by petitioners by reason of said sale, "be enjoined from interfering with petitioners' rights in said street, and from entering any judgment for or against petitioners." The land to be sold is a strip thirty feet wide by one hundred and thirty-two feet in length on the east side of North Fourth avenue, beginning at the corner of that avenue and Broad street; the street north of this strip is sixty-five feet wide; and hence, in the event the proposed sale is made, the whole of North Fourth avenue will be of even width, to wit, sixty-five feet. Furthermore, by taking off this strip the eastern line of North Fourth avenue will be on a line with, and, as it were, a continuation of the east line of South Fourth avenue, thus making the eastern boundary of South Fourth avenue, which is south of Broad street, and the east line of North Fourth avenue, which commences at the northern line of Broad street, but the continuation of one straight line. Other facts were alleged which it is not necessary to set out.

In its answer the City of Rome admitted practically all of the facts alleged in the petition, except that the proposed sale would injure petitioners in any respect, and this it denied. It admitted that it had proceeded with the sale of the strip in question and had appointed two certain freeholders to assess the damages that might be sustained by abutting-lot owners under the power given it by that portion of the charter quoted. In conclusion the answer said: "This defendant answers not only for itself but for said Brett and Wilkerson as assessors, as it is only under the authority of this defendant that said Brett and Wilkerson are acting." The Lanhams answered, setting up substantially the same defense offered by the city. After the answers were filed the petitioners moved the court to strike them on the ground that they set forth "no defense to said petition, either in law or equity;" which

motion the court did not entertain. Evidence was introduced by defendants, in rebuttal to the sworn petition, to the effect that the proposed sale of said strip and the erection thereon of a three-story brick building would enhance the value of neighboring property. The court denied the injunction, and the plaintiffs excepted.

*Denny & Harris,* for plaintiffs.

*Halsted Smith* and *Seaborn & Barry Wright,* for defendants.

BECK, J. (After stating the facts.) That municipalities may be given power and authority to change, obstruct, or even vacate streets by legislative grant, in the absence of constitutional restriction, there can be no doubt. *Coker* v. *Railway Company,* 123 *Ga.* 483. See also *Adair* v. *Atlanta,* ante, 288. And as it is not contended in the case at bar that there is any constitutional inhibition against the provisions of the charter of the City of Rome giving to it the power to "open, lay out, to widen, straighten, or to otherwise change streets, alleys, and squares in said city," the only question to be determined is whether or not the language quoted confers upon the city, expressly or by necessary implication, the power to sell the tract which is the subject of this action. In the case of *Trustees* v. *Atlanta,* 93 *Ga.* 474, Mr. Chief Justice Bleckley, in construing this identical language, said: "This grant is comprehensive enough to embrace the alteration of a street in any respect, whether on, below, or above the surface of the earth." "To widen, straighten, or to otherwise change" surely seems to be about as broad as the statute could be made. Indeed it would be hard to conjecture a better legislative expression to cover the specific facts of this case. By making the proposed change the street will be more uniform in its width and appearance; it will be straightened in the sense that it will be to a certain extent free from very pronounced irregularities in shape; and the street will remain open to the free and unobstructed use of the public. Hence it follows that the court did not err in refusing to grant the injunction restraining the city from selling the described strip and appointing assessors under the section of the charter set out in the third headnote.

*Judgment affirmed. All the Justices concur.*