## ATLANTA & WEST POINT RAILROAD CO. *v.* ATLANTA, BIRMINGHAM & ATLANTIC RAILROAD CO.

1. In an application for injunction against a railroad company, to prevent the laying of its tracks and operation of its trains along a street of a city, by one alleging himself to be the owner of the fee in the street, subject to the easement, and also the owner of the abutting property, and alleging that the proposed use of the street against his will and without the condemnation proceedings authorized by law would be an unlawful taking and damaging of his property, it not appearing from the evidence offered by the plaintiff that he would suffer any special damage other than the mere fact of taking his property, it was not erroneous for the court on the hearing to exclude, as irrelevant and immaterial, an affidavit offered by the defendant to the effect that the construction of the road along the street would increase the values of the abutting property.

2. As to the one-acre tract of land involved in the controversy, the southeastern boundary was rendered ascertainable by the location of the right of way of the railroad through a definitely described tract of land. The north and south lines of the larger tract, from which the one acre was intended to be carved, under reasonable construction were to be other boundaries of the one-acre tract. The remaining boundary was ascertainable by drawing a straight line, connecting the north and south boundary lines, running parallel with another fixed north and south line, and to be located sufficiently west from the southeast boundary to make the enclosure contain exactly one acre. The deed with such description was sufficiently definite in matters of description to operate either as color or conveyance of title to the one-acre tract.

3. On the hearing of the application for interlocutory injunction, it was not erroneous to admit in evidence the affidavit of the surveyor and an attached plat of land, it being deposed by the witness that he had made the survey and the plat, and that it truly represented the land in dispute.

4. There was no error in excluding from evidence that part of the affidavit of the witness concerning which complaint is made in the fifth assignment of error in the cross-bill of exceptions.

34

5. The court's decision on the interlocutory hearing is not final on the question of title, and it is not up for review as such. Its ruling upon that question will be regarded only as if it had found that there was sufficient evidence of title to authorize the grant of an injunction in the event there were other reasons which justified interference by the court. From this standpoint, the evidence upon the question of title was sufficient to justify the exercise of the court's discretion.

6. The laying of a track upon a street in a municipality for the purpose of operating a commercial steam railroad is of itself the imposition of an additional servitude, entitling the owner of the servient fee to compensation being first paid before construction.

Argued February 6,—Decided May 16, 1906.

Petition for injunction. Before Judge Pendleton. Fulton superior court. December 16, 1905.

The plaintiff alleged, among other things, its ownership of a certain tract of land, basing its title upon certain deeds described in the petition and possession thereunder for a sufficient length of time for prescription to mature; that without plaintiff's consent, and without first having made an effort to condemn said property and without having offered or tendered plaintiff payment for the same, the defendant proposes and now threatens to lay, immediately upon and across said land, a railroad track, and, unless restrained, will at once construct a railroad track upon said land, to the damage of the plaintiff, which damage will be irreparable, because "it will be destruction of the property itself, and in grading the same it will place said property in a condition so as to render it unfit for the uses to which petitioner has put said property in connection with its business, and in such grading the soil of the property of your petitioner would be carried away and removed," and because said conduct of defendant "deprives petitioner of its property without due process of law," in violation of the constitutions of the United States and of the State of Georgia; and that there is no adequate relief at law. The prayer was for injunction, and for general relief. The defendant filed a general demurrer, and, subject thereto, filed its answer in the nature of a cross-bill, whereby it denied the plaintiff's ownership of the land, and any intention to do any of the things complained of, on plaintiff's land. It admitted that it "is proposing to lay its tracks in Morgan street for three and a half blocks north of Depot street, running to and across Depot street on to its own land." It alleged, that "Morgan street is not in the possession of the plaintiff, but is in the possession of the City of

LaGrange, and is being used and has been used by it for a long time as a street, and the same has been dedicated for a great number of years to the City of LaGrange for street uses and purposes;" that "this defendant is laying its tracks or proposes to lay its tracks in Morgan street, and not on any land of the plaintiff;" that, for reasons stated, defendant has not sought to condemn Morgan street as plaintiff's property, nor offered or tendered to the plaintiff compensation for the same; that defendant has authority from the City of LaGrange, and proposes to lay "its tracks in Morgan street so as not to interfere with said street for ordinary street purposes. It will lay its tracks in the center of the street and leave ample room on each side for vehicles and pedestrians to pass, and its tracks will be so laid that the top part of the rail will be at a level with the surface of the street, and vehicles can pass over it without trouble." The street will be left "open for purposes of travel by the general public," and will not be "appropriated" by defendant "to its own particular use," nor will its use "in any manner obstruct travel thereon, or render said street less fit to the use of the public as a street." The line proposed to be constructed will be a "simple track along that portion of Morgan street before referred to," and will be laid "subject to whatever rights abutting-property owners may have therein, and its railroad will be maintained and operated in Morgan street only so long as it is used as a street. If the plaintiff owns any property abutting on that portion of Morgan street, on which defendant's tracks will be laid, it will not interfere with plaintiff by its tracks, for the reason that the defendant lays its tracks by the permission of the State and municipal authorities; and if the plaintiff by reason of being an abutting owner should ever have the right to assert dominion over the land occupied by Morgan street, on which the defendant's tracks will be located, the defendant will in that even remove its tracks therefrom, or pay for the land in the manner pointed out by law." Defendant also pleaded that, for certain reasons not necessary to mention, the plaintiff was estopped from denying that "the ground to be occupied by defendant with its tracks was and is a public street;" and alleged specially that it has charter authority from the State to construct and operate a railroad between specified points, which would authorize the building through the City of LaGrange. The prayer was, "for a decree as against the plaintiff, establishing its

right to lay its tracks in said Morgan street and to operate its rail-road thereon, and that the restraining order previously granted be dissolved, and it be permitted to proceed with its work."

Upon the interlocutory hearing the plaintiff introduced in evidence a deed, dated August 27, 1852, and recorded, from Joseph Poythress to the Atlanta and LaGrange Railroad Company, conveying in fee simple land therein described as follows: "A certain tract or parcel of land situated, lying, and being in the sixth district of the county and State aforesaid, known and distinguished in the plan of said district as a part of lot number one hundred and sixteen (116), being a part of the lot occupied by the said Joseph Poythress, known by the following metes and bounds, being all of said lot lying east of a line running from the southwest corner of the termination of the street running south from the graveyard in LaGrange by David E. Beeman's Stage Stables, said line to be in a straight line (running south) with the west line of said street through said lot to the south line; bounded on the north by Augusta B. Famins, west by the said Joseph Poythress, south and east by the lands of said Atlanta & LaGrange Railroad Co., supposed to contain about two acres." Also, a deed from James H. Towns to the Atlanta and LaGrange Railroad Company, dated August 30, 1850, and recorded, "in consideration of running their contemplated railroad on and along his land," and of $500, conveying, "the right of way over which to pass at all times, by themselves, directors, officers, agents, servants and hirelings, in any manner they may think proper, and particularly for the purpose of running, erecting, and establishing thereon a railroad, with double tracks and turnouts, or with single track and turnouts, as may at all times be at the discretion of said company pursuant to a charter of incorporation granted said company, passed the twenty-seventh day of December, eighteen hundred and forty-seven; and to this end the limits of said right of way shall extend in width one hundred feet on each side, from the center of the roadway of said railroads when completed, and to extend in length through the whole tract of land owned and claimed by the said Jas. H. Towns, situate, lying, and being in the said county, adjoining lands of Poythress, Cutwright, and Turner, being a town lot in LaGrange, whereon said Towns now resides, and running in such direction through said tract of land as said Atlanta & LaGrange Railroad Company, by

their agents, managers, or workmen, shall think best suited for the purpose of locating and establishing their said works; and connected with the said right of way, the said company shall have the right of way to cut down and remove all such timbers or other growth, on each side of said road, as would by falling on or shading the same injure the rails or other parts of said road.   In addition to the above-mentioned limits the said Towns hereby conveys to said company one acre of land on the northwest side of the right of way limits, for the purpose of a depot lot to be used for railroad purposes only; said parcel of one acre to be bounded on the west by a line parallel to the street running south from Herring's tavern; the depot to be located as nearly as possible midway of said town lot between the north and south lines." This deed was objected to by the defendant, upon the ground that, in so far as the "one acre of land on the northwest side of the right of way is concerned," it was invalid, because the description is so indefinite and uncertain that the acre mentioned can not be located therefrom.   The court overruled the objection, and the defendant excepted.

The plaintiff offered in evidence the affidavit of H. W. Seib, to the effect that the deponent is a civil engineer and has been such for 20 years; he was employed by the defendant in 1895; "he is acquainted with the land described in the two deeds" just described; he "attaches hereto a blue print of the plat of land described in said two deeds;" the land described in the deed from Poythress is indicated in said plot by pink lines, and lies just south of the original land-lot lines dividing lot 108 from 117, and 109 from 116, that is to say, the tract described in the Poythress deed is partly in land lots 116 and 117, and south of land lots 108 and 109, and the right of way of plaintiff passes through said tract; the tract described in the Towns deed lies just south of and adjoining the lot described in the Poythress deed; on this lot is located the depot building of the plaintiff at LaGrange; the depot and tracks of the plaintiff are now in the same place where they were in 1895.   Being perfectly familiar with railroad construction, the same being within his profession, deponent is certain no material change of location of depot or track has taken place since the road was built.   As a basis for this opinion, he says that the "cuts and fills and curves and alignment" all show the impossibility that any material change in the location of the main line has taken place; that they are the

same as originally made. The line which the defendant has located between depot street and Broom street is across these two tracts or lots, passing along near the western boundary of said lots, and is located on the land described in the two deeds attached to the petition. The line is indicated on the blue print by a line marked "A., B. & A." The lot indicated by the green boundary on said blue print is a lot sold out of the Poythress tract by the plaintiff to the Oil Company, and is now occupied by it. The distance the line located by the defendant passes over the Towns and Poythress lots is a distance of 660 feet from Depot street, and it was along this located line, between Depot street and Broom street, that the defendant was working when the work was stopped by injunction. (The accompanying plat shows in substance what is represented by the blue print referred to in the affidavit of Seib, and contains some additional matter necessary to a better understanding of some parts of the testimony of the various witnesses. By reference to this map, it will be seen that the location of the proposed railroad is along the center of Morgan street, and is represented by the line marked, "A., B. & A. Ry. Location." Morgan street is the same which is referred to in the Poythress deed as running "south from the graveyard in LaGrange, Georgia, by David E. Beeman's stage stables." Said street then terminated at what is now called Broom street. It is claimed by Seib that the land conveyed by the Poythress deed lies within the boundaries indicated on the plat, F B D E; that the right of way and the one-acre tract conveyed by the Towns deed lie within the boundaries A I G D; that the land conveyed by the Atlanta and LaGrange Railroad Company to the La-Grange Oil Manufacturing Company lies within the boundaries J K L M; that the depot of the Atlanta and LaGrange Railroad Company lies wholly on the right of way of that company; and that the one acre in controversy lies within the bounds A C H I. Main and Morgan streets run north and south, while Hines, Broom, and Depot streets run east and west. The right of way of the Atlanta and LaGrange Railroad Company is 200 feet wide, and, as passing through the lands conveyed by Poythress and Towns, may be described as bounded on the east by the line G D E, and on the west by the line N C H.) The defendant objected to the following part of Seib's affidavit: "He is acquainted with the land described in the two deeds, copies of which are attached to the petition in this case.

Deponent attaches hereto a blue print of the plat of land described in said two deeds," upon the ground that Seib did not show that he applied the description in the deed to any particular acre, or how he located the land as platted, or how he determined the boundaries of said land, or any fact whatsoever whereby he applied the description in the deeds to the land platted by him; and because Seib had simply furnished a plat of the particular piece of ground, without in any way disclosing any connection between said plat and the deeds, or showing how or in what manner he used the terms of the deed in making the plat. The objection was overruled, and the defendant excepted.

The plaintiff introduced affidavits showing as follows: Prior to 1889 the part of Morgan street now in controversy had not been open as a street or highway, but, in lieu thereof, the road previously used ran through the lands of the LaGrange Cotton Oil Mills Company. The company just mentioned fenced in their lands in 1888 or 1889, and by reason thereof the road was closed, and "the people then, for the first time, used for a road" the portion of Morgan street now in controversy. In 1849 the streets were not called by the names by which they are now known. At that time Joseph Poythress lived at the intersection of what is now known as Broom and Main streets; he was in possession of a large lot of land fronting what is now known as Main street, and running east across what is now known as the right of way of the Atlanta and West Point Railroad; just south of this Poythress lot lay a large lot in possession of James H. Towns, where he lived, fronting on what is now known as Main street. This lot extended back east across the present right of way of the Atlanta & West Point Railroad. What is now known as Morgan street was not open south of Broom street so as to cover the land in dispute, until late years. For a long time, and until the Oil Company fenced in its property, the part of Morgan street now in controversy was an open space unenclosed, frequently used by circuses, known as the property of the Atlanta & West Point Railroad. Being unenclosed, the people could pass over it, and many people used "the way" to reach the depot of the Atlanta & West Point Railroad Company, going diagonally across this open space, but the way did not follow the present course of what is now called Morgan street. After the Oil Company took possession of part of this space, the way was closed, and for a time the

way passed beyond the fence, then diagonally across to the depot, and some years later it moved further west and became located where it is, and was called Morgan street. This way above described was used as the most direct way to the Atlanta & West Point Railroad, and was more level, and being a better way, it became mostly used by people doing business with the railroad company. It was some ten years after the oil company built its fence that Morgan street was extended so as to cover the land in controversy. The Atlanta & West Point Railroad Company completed its line of railway in LaGrange in 1853, and immediately thereafter built its depot and side-tracks at the present location, where they have been located and used by said company for the transaction of its business ever since. From 1850 to 1855 Herring's tavern was located on what is now known as Main street, at the corner of Main and Hines streets. Main street is the street running south to Depot street, parallel with Morgan. The terminals, depot, and tracks of the Atlanta & West Point Railroad Company in La-Grange were built before 1865 at the present location, and from 1865 to the present time they have been continuously and uninter-ruptedly used for railroad purposes by said company in the conduct of its business. There has been no material change in the location of its tracks, and the original site has been unchanged; said depot site, main line, and side-tracks are located in the northeast corner of land lot No. 116 in the 6th district of Troup county.

The minutes of a called meeting of the city council of LaGrange, dated July 29, 1894, showed the pendency of the proposition for the opening or continuation of Morgan street to Depot street (involving the land now in dispute), and the reference to a committee with power to act. A deed from the Atlanta & West Point Railroad Company to the LaGrange Oil Mills, executed June 4, 1883, conveyed the land referred to by witnesses as the lands of said company over which the road to the depot ran. Plaintiffs tendered in evidence another affidavit of H. W. Seib, that he has measured the land described in the deed from J. H. Towns to the Atlanta & West Point Railroad Company, being the same as that represented west of the west line of the right of way of the plaintiff in the blue print attached to the petition, and said land is embraced in and includes the land enclosed between the lines colored yellow, and the west line of said right of way is continued by a white dotted

line, and the land so described contains only one acre of ground. To this affidavit and plat the defendant interposed an objection on the same ground as that before stated with reference to Seib's other affidavit. The objection was overruled, and the defendant excepted.

The defendant offered the affidavit of Roy Dallis and seventeen others, that, for years varying from 16 to 65, each of them has been a resident of LaGrange; that each is familiar with the land values of the city; that the building of the Atlanta, Birmingham & Atlantic Railroad Company's tracks upon Morgan street in the way in which it is proposed to build them will add to the value of the land lying south of Broom street, north of Depot street, and east of Morgan street; that the proposed building of said line on Morgan street has added to the value of the property adjacent to Morgan street, and since the proposed construction of the track this land has increased in value and can not be bought now at prices for which it could have been bought prior to the time when it was determined that the railroad was to be constructed upon Morgan street; that each affiant has observed the sales of property in LaGrange for a number of years and is familiar with such value, and has heard of the prices at which lands have sold and has known such prices. This affidavit was excluded from evidence, as immaterial and irrelevant. The same ruling was made as to a second affidavit by Roy Dallis, that, from the boundaries, fences, and property lines as they have existed for 25 years to deponent's knowledge, said acre of land so described can not be located as bounded and surveyed by any civil engineer; neither can said description be applied to one particular acre of land as distinguished from another; neither northern nor southern boundaries are described so that they can be located from the property lines at a distance of 25 years; the western boundary is a variable line which is not and can not be located; if the eastern boundary could be located, or the western boundary of the right of way of the Atlanta & West Point Railroad, then, the western boundary of said acre being a variable line and the northern and southern boundaries being unlocated by the property lines as they existed 25 years, the description is so general and indefinite that no particular acre can be located therefrom, and no civil engineer could survey and locate said land, taking the property lines as they have existed for 25 years.

The defendant introduced much evidence tending to contradict that offered by the plaintiff, especially upon the question as to when Morgan street as now located was first used as a street, and the manner of the use, it being contended that the street was so used for many years before the railroad bought any land from Poythress or Towns. The defendant's charter was granted by the secretary of State, in the usual form, on April 19, 1905. An ordinance of the City of LaGrange granted permission to the defendant company to construct, maintain, and operate its railroad along and upon certain streets (including Morgan street from the white cemetery to Depot street) at such grades as may be found necessary in completing the line of said road, provided that the grade of Morgan street shall not be materially changed, and that the company shall do all work necessary to place all of said street on the proper grade with said railroad, and so maintain the same, and otherwise comply with such regulations as the city council shall from time to time prescribe. The defendant introduced a contract by the mayor and council in pursuance of said ordinance, authorizing the use of Morgan street for the purpose mentioned. The defendant read in evidence paragraphs 2 and 3 of its original answer, as follows: "This defendant is not proposing or threatening to lay tracks across the land of the plaintiff; on the contrary this defendant is proposing to lay its tracks in Morgan street for three and a half blocks north of Depot street, running to and across Depot street on its own land. This defendant is laying its tracks or proposes to lay its tracks in Morgan street and not on any land of the plaintiff." "The defendant . . admits it has made no effort to condemn Morgan street as belonging to the plaintiff, for the reason that Morgan street does not belong to the plaintiff but belongs to the City of LaGrange; and defendant admits that it has not offered or tendered the plaintiff any compensation because of its proposed use of Morgan street, for the reason that it has the power under its charter and the written consent of the City of LaGrange to use said Morgan street for its tracks. It proposes to lay its tracks in Morgan street so as not to interfere with said street for ordinary street purposes. It will lay its tracks in the center of the street and leave ample room on each side for vehicles and pedestrians to pass, and its track will be laid so that the top part of the rail will be at the level of the surface of the street, and vehicles can pass

over it without trouble. If it is intended by paragraph 5 of the petition to allege that the defendant is proposing to take land of the plaintiff, such allegation is denied."

The court denied the injunction, but ruled that the plaintiff had shown a title in fee to the land over which Morgan street passes from Broom street to Depot street, subject to the easement of the public in said Morgan street; and that the Towns deed was a legal deed. The plaintiff excepted to the denial of the injunction; and the defendant by cross-bill excepted to the rulings adverse to it, touching the admission and exclusion of evidence, already stated, as well as to the rulings that the plaintiff had shown title in fee to land over which Morgan street passes from Broom street to Depot street, and that the Towns deed is a legal deed.

*Dorsey, Brewster & Howell* and *A. H. Thompson,* for plaintiff.

*Rosser & Brandon, John L. Hopkins & Sons, Hatton Lovejoy,* and *Longley & Longley,* for defendant.

ATKINSON, J. 1. The affidavit which was excluded as evidence, to which exception is taken by the first ground of the cross-bill of exceptions, is not relevant or material. There was nothing in the case to have justified the court in finding that there was any damage to the plaintiff independent of the taking. If there was actual taking, it could not lessen the plaintiff's right to a recovery of his property which was wrongfully taken by showing an enhancement of values of adjoining property. For the reasons stated, the court did not commit error in excluding from evidence the affidavit mentioned.

2. Relative to the description of the one-acre tract mentioned in the Towns deed, counsel for plaintiff contend that the description is sufficient, and in support of their position cite *Gress Lumber Co.* v. *Coody,* 94 *Ga.* 519; *Vaughn* v. *Fitzgerald,* 112 *Ga.* 517. Counsel for defendants contend that the description is insufficient, and cite *Luttrell* v. *Whitehead,* 121 *Ga.* 699; *Pitts* v. *Whitehead,* 121 *Ga.* 704; *Crawford* v. *Verner,* 122 *Ga.* 814; *Priester* v. *Melton,* 123 *Ga.* 375; *Tippins* v. *Phillips,* 123 *Ga.* 415. The Towns deed is good either as a conveyance of title to the one-acre tract, or as color of title thereto, if the descriptive recitals are so definite as to render the tract capable of being located. This proposition is supported by all of the cases cited both for the plaintiff and the defendant. The cases also support the converse of the proposition;

that is to say, if the description is so indefinite that the land is incapable of being located, the deed is inoperative, either as a conveyance of title or as color of title.   Let us try the deed and see if it will stand the test.   In the first place, the deed definitely describes a larger tract as "the whole tract of land owned and claimed by the said J. H. Towns, situate, lying, and being in said county, adjoining lands of Poythress, Cutwright, and Turner, being a town lot in LaGrange whereon said Towns now resides."   From this description it is an easy matter to locate the larger tract of land, because it is the "whole" tract in LaGrange, Georgia, whereon James H. Towns then resided, and which he then owned and claimed, and which joined lands of Poythress, Cutwright, and Turner.   With an entire tract thus located, we next look to a further descriptive fact, namely, that a right of way, 200 feet in width, "to extend in length through the whole tract" just described, was conveyed, the right being given to the railroad company of running said right of way "in such direction through said tract" as the agents of the company "should think best suited for the purposes of locating and establishing their said works."   Under the principle that that is certain which can be made certain, this became sufficient as a conveyance of a right of way through said tract, and confined to such particular part thereof as the agents · of the company should see fit to adopt as the route over which to go, and became operative as a conveyance as soon as the right of way was thus located.   *Gaston* v. *Gainesville Ry. Co., 120 Ga. 516.* We now look to the next descriptive fact:   When the right of way through the entire tract becomes vested and fixed, the deed provides for the conveyance of "one acre of land on the northwest side of the right of way limits."   Under the rulings made in the two cases cited by the plaintiffs, supra, and in Hanly *v.* Blackford, 1 Dana, 1, 25 Am. Dec. 114, the one acre must be carved out of the larger tract so as to extend along the line of the right of way for the full limit of the right of way through the larger tract.   Thus far we have the right of way as the boundary of the one acre on the one side, and the two boundaries of the larger tract on two of the other sides.   There remains to ascertain the boundary of the one acre on the remaining side.   By the language of the deed, the location of the remaining line is to be ascertained by drawing a line parallel "to the street running south from Herring's tavern,"

at such distance from the right of way as to enclose one acre of land. Thus we see that the right of way of the railroad bounds this one acre on the southeast side; that the outside boundary lines of the whole tract bound it on the north and northeast and on the south and southwest sides, and that the last line is ascertainable by drawing a line parallel with the street running south from Her-ring's tavern at such distance from the right of way as would make the enclosure contain one acre. The street running south from Herring's tavern had a definite and fixed course, and there could be no speculation as to where this line should be located after the right of way was once selected. This description we regard as definite, thorough, and complete, and entirely sufficient to operate as a conveyance of the one acre lying within the boundaries mentioned. As to whether that acre covers any part of the land now in dispute is another question which must be settled by other evidence. From what has been said, it follows that the court did not commit error by admitting the deed in evidence.

3. The objections urged to the blue-print plat attached to the affidavit of the witness Seib, and likewise to the language of Seib, whereby the witness deposed, among other things, substantially that the plat indicated the location of the one-acre tract described in the Towns deed, and that the said acre embraced a portion of Morgan street, over which the defendant proposed to construct the railroad, are untenable. The witness testified that he knew the location of this property, and that the map was a true representation. His information may or may not have been well founded in fact, and is open to be rebutted either by cross-examination or other evidence; but it was unnecessary for the witness to depose anything further in order to render his affidavit admissible in evidence. Its weight was a question for the chancellor hearing the case, upon questions both of law and fact.

4. There was no error in excluding part of the affidavit of Roy Dallis upon the ground that it was irrelevant and immaterial. The Towns deed clearly indicated the manner in which the boundaries of the one-acre tract should be ascertained, and that fact prevents the excluded evidence from being material to the question at issue.

5. Upon consideration of other grounds of error urged in the cross-bill, it was ascertained that the Towns deed was not void for

uncertainty, and that the same was admissible in evidence. There was no other objection urged thereto, and there is nothing to indicate that it is illegal in any particular. There was evidence to show that Morgan street was located upon the particular acre of ground which was conveyed by the Towns deed, and also upon the land conveyed by the Poythress deed. The Poythress deed and the Towns deed were each good as color of title, and the evidence showed that from 1853 up to the time of the institution of the suit the plaintiff was in actual possession of some part of the property described in both deeds, and in constructive possession of the whole, continuously, openly, and notoriously. There was also evidence to the effect that not until as late as 1882 was Morgan street laid out or used as a street at the place where it is now established. It follows, therefore, that there was sufficient evidence to enable the court to hold that before the acquisition of an easement by the city over this property within the limits of Morgan street as now located thereon, the plaintiffs had acquired prescriptive title to the property. This being true, it was unnecessary for them to show title in either Poythress or Towns. The court takes judicial cognizance of the fact that the plaintiff, the Atlanta & West Point Railroad Company, is the successor by legislation of the Atlanta & LaGrange Railroad Company; consequently, it is unnecessary to show a deed between those two corporations conveying the property to the latter. Upon what is said, we hold that for none of the reasons mentioned in the 6th and 7th assignments of error in the cross-bill did the court commit error in either of the rulings in those assignments mentioned. We do not mean to hold that the evidence demanded any such finding. On the contrary there was evidence in behalf of the defendant tending to show that the place now occupied by Morgan street had been used as a highway before the railroad was constructed, and had been maintained as such; and had the court found in favor of that contention, we would not have disturbed its finding.

6. We now come to a consideration of the main bill of exceptions. It is alleged that it was erroneous for the court to refuse the injunction, for the reason that the plaintiff was the owner of the fee in and to Morgan street, over which the defendant proposed to construct and operate a steam commercial railroad without the consent of the plaintiff and without first having paid the plaintiff therefor,

and without having condemned the property in the manner provided by law, it being declared that such use of the property by the defendant under the circumstances just enumerated amounted to a taking of plaintiff's property without due process of law, and that the same was violative of those clauses of the constitution of this State which declare: "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid," and, "No person shall be deprived of life, liberty, or property, except by due process of law." The court found as a matter of fact, that the fee to the property was in the plaintiff, and that there was imposed upon it an easement in the nature of a public street which had been acquired and established in favor of the City of LaGrange for the benefit of the public as a highway for the purpose of traveling thereon by persons with their vehicles. Upon these facts the court found as a matter of fact, that, without the consent of the plaintiff, the defendant, having obtained the permission of the city to use this particular street, and the authority from the State to run through any of the streets of the City of LaGrange, had the right to construct and operate its railroad for the purpose of operating thereover a steam commercial railway engaged as a common carrier of freight and passengers along the line of the street, and without payment to the plaintiff on account of his ownership of the fee in the property for his interest therein. The main question presented by this ruling is the determination of whether or not, under these circumstances, there was a taking of the plaintiff's property by the defendant. For a fair discussion of this question we will deal with Morgan street, along which it is proposed to construct and operate the line of railway, as if it had been finally determined that the *fee,* subject only to the public easement, is in the plaintiff, and that the public easement as for a way of passage by the public generally, either with or without vehicles, had been imposed thereon, and is now in full enjoyment of the public. The easement arose by implied dedication, but that will not affect the case. It is sufficient that there was a dedication for the general public. Being implied, it follows, as a matter of course, that there are no express limitations as to the character of the use which would restrict the public from any of the legal modes of enjoyment. It goes to the public, therefore, as a public way of passage in the broadest sense. From this standpoint what are the

respective rights of the plaintiff as owner of the fee as against the defendant as a member of the public, who is attempting as such, by authority of the State and contract with the City, to use the street in the manner proposed? The case must turn upon whether the proposed use falls within the pale of the easement. If so, that concludes debate, for the plaintiff, having by dedication authorized the use, could not be held to deny that which he had granted. If the use does not fall within the pale of the easement, the defendant could not look to the easement as a justification of his use, and his act of appropriation would, as against the owner of the fee, be wrongful. It would not only be wrongful, but, under authority of Elliott on Roads & Streets (2d ed.), §§201-212, it would be such a taking as the constitution prohibits. Such taking is generally referred to in the books as an additional servitude, which is no more or less than a use of a highway in a manner not authorized by the act of dedication. "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." See title, "Highway" in 4 Words & Phrases Judicially Defined, 3291; also *Southern Ry. Co.* v. *Combs*, 124 *Ga.* 1004. It is the generic name for all kinds of public ways, including, among others, roads, streets, and alleys. No matter whether obtained by prescription or dedication or under the right of eminent domain, it is a highway if there is a general right to use it for travel. Elliott on Roads & Streets (2d ed.), §§1, 3. "A street is a highway in a city or town used by the public for the purpose of travel, either by means of vehicles or on foot." 7 Words & Phrases Judicially Defined, 6684, title "Street." From the definitions given, we are justified in regarding a street as a public way in a town or city open and free to any one who has occasion to pass along it on foot or with vehicles. It will be observed that there is no restriction as to the person, because, in order to be public, it must be free to every one. Nor is there restriction as to the kind of vehicle to be used as a means of conveyance over the street, other than as qualified by the implication that no kind shall be used which within itself, or which by the manner of its use, shall interfere with the general public in their enjoyment of the right of travel over the way. There is no restriction as to the purpose of the use. It may be for pleasure or business or for any cause for which occasion may arise. All streets are, of course, within the

police regulation of the several municipalities, but, except as controlled by that regulation, there is nothing in the nature of a street to prevent its free use as a way of passage by all people in all of the modes which are not exclusive but which are consistent with the general public use. A given street may be a greater necessity to those people residing in the immediate vicinity, but it could not be limited to their uses, because the limitation would at once destroy the public feature of the way, and it would cease to be a public street. For the same reason it could not be restricted to use for the purpose of pleasure or business or any necessity. The nature of the right demands that it be open for all purposes. It may be a driveway for carriages or a footway for pedestrians or a wagon-way for hauling loads or for numerous other similar purposes. For these uses it may be of more frequent use and of a greater necessity to those living in the immediate vicinity; but the idea of a public way would not be complete unless the same way were submitted to like uses by other members of the public more remote, who may desire to pass over the way either in coming to the particular vicinity or in passing through to some other place. It is essential to the happiness and well-being of society that avenues of passage be established for the use of the public from place to place in the community and from community to community throughout the country. Under our system of laws they have been established, and it needs but little reflection to see the good derived from them and the disaster that would follow their destruction. Under the present system, the entire country is open and accessible to every one, affording a splendid opportunity for that intellectual, commercial, and industrial development which follows association with others and exchange of products. The wider the range, the greater the benefit. We should not take a backward step, and the law does not authorize any policy looking to a destruction of this means of communication. On the contrary the whole tendency is to its encouragement. For its perpetuation the great right of eminent domain stands sponsor. Our constitution places that right even above the sacred right of private property, because it is for the public good. The law in its impartiality is as strict in seeing that the way for passage is as open to every person for every legitimate purpose of passage, as it is to prevent the closing of the way. If this were not true, the law would at once

fail, because any limitation against any special one would destroy the public character of the use. From what has been said, it must follow that from wheresoever he may come one may use any public highway wherever located in this State as a way of passage for any purpose. It may further be said that he may employ any kind of vehicle or conveyance, so long as the same does not exclude others from the enjoyment of the way. If the character of the vehicle or the method of its use be such as to introduce the idea of *exclusive use,* it will not be permitted; but if it be not such, it would be wrong to prevent it. If we adopt this exclusive use idea as a keynote, we will, upon application, find that every one of the textbooks and practically every decision cited in support of the several texts, where the right to operate railroads along the streets or other public highways has been discussed, turns finally upon whether the use intended to be made of the highway amounted to an exclusive use. See, among others, the following texts and decisions cited in support of each: 1 Wood on Railroads, 775; Washburn on Easements & Servitudes (4th ed.) 252; 2 Dillon on Mun. Corp. §725; Cooley's Const. Lim. (7th ed.) 793; 1 Lewis on Em. Dom. (2d ed.) §111; Nordhurst v. Ft. Wayne Co., 163 Ind. 268, 106 Am. St. R. 222, and citations in notes. In the present case, what will be the manner of the use employed by the defendant? That has not been determined by actual experiment, and can only be determined by a consideration of what is proposed. It is true that the defendant, by its answer, says that it will not operate in such way as to exclude others, but at the same time it appears that the defendant has a charter from the State, with ample powers to operate a commercial railroad between distant points as a common carrier of freight and passengers. It shows the court that it is such a common carrier, and has for its purposes, among others, the objects of carrying out its charter privileges, with great present capacity and bright future possibility. The laying of its tracks is only preliminary to what will be done. Under these conditions we may as well consider the facts as they must necessarily occur. On account of the ponderous and unwieldly nature of the machinery necessary to be employed over this railroad, the defendant could not observe the ordinary rules of the road. Its use of the street would be dangerous and inconsistent with that of pedestrians or the general public according to the various modes of travel. Its

whole tendency would be to exclude others, and the law would not look upon the use otherwise than as exclusive. Without first obtaining the lawful right to the use of the property, the defendant should have been enjoined from laying its rails or doing any other act in execution of the unauthorized use of the street.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concur.*