ATHENS TERMINAL COMPANY *et al.* v. ATHENS FOUN-
DRY AND MACHINE WORKS.

1. A commercial steam railroad company can not lay a railroad track longitudinally along the streets of a city without the sanction of the General Assembly. This sanction may be given either in the charter of the city or of the railroad company.

(a) Legislative sanction is not contained in the charter of the City of Athens.

2. Civil Code, § 2167, par. 5, confers upon a railroad company incorporated under the general railroad law the power to construct its track longitudinally in the streets of a city, for lawful use, with the written consent of the municipal authorities.

3. Although the General Assembly may empower a commercial railroad company to occupy the streets of a town or city with the consent of the municipal authorities, yet such permission is subject to the constitutional restraint that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."

4. If the property of an abutting-land owner will be damaged by the laying and use of a track in the street, the railroad company must first pay or tender to such property owner just and adequate compensation for the damages consequential upon the construction of the track, and the uses to which it will be put. Upon failure to pay or tender the amount of such damages, equity will enjoin the construction of the track.

5. The facts developed before the judge on the interlocutory hearing were sufficient to support his finding that the plaintiff was not guilty of laches in applying for the equitable remedy of injunction.

6. The provision in the charter of the City of Athens, that the municipality "shall have full power and authority to open, lay out, widen, straighten, or otherwise change the streets, lanes, and alleys in said city, whenever the said mayor and council shall see proper to exercise said power," is sufficiently comprehensive to authorize a slight deflection of a street near one of its termini.

Argued July 4,—Decided October 8, 1907.

Injunction. Before Judge Brand. Clarke superior court. May 10, 1907.

This is an injunction suit brought by the Athens Foundry and Machine Works against the Athens Terminal Company, to restrain the latter from laying its track longitudinally in Foundry street, and from changing the course of Washington and Clayton streets, in the City of Athens. The Athens Terminal Company is chartered under the general railroad law, and owns, in the City of Athens, three blocks of property on the western side of Foundry street, lying between Broad street and Hancock avenue. The Athens Foundry and Machine Works owns property on the other side of Foundry street. The property of the Athens Terminal Company is intersected by Washington and Clayton streets. Washington street connects with Foundry street at a point opposite the gate which opens into the property of the Athens Foundry and Machine Works. Foundry street is about forty feet wide. On January 3, 1906, the City of Athens passed an ordinance granting to George J. Baldwin and William W. Mackall, or their assigns, the right to construct a railroad track in Foundry street, to deflect Clayton and Washington streets, and to build warehouses and a freight depot, in accordance with certain plans submitted to the city. Work was begun in accordance with the ordinance, within six months from the date thereof, and the property was excavated and graded; and at the time when the injunction suit was brought a large sum of money had been expended on the project.

The Athens Terminal Company was chartered under the gen-

eral railroad law on October 14, 1906. On January 14, 1907, Baldwin and Mackall transferred to the Athens Terminal Company all of their interests in the franchises granted by the City of Athens, and on April 19, 1907, the City of Athens ratified and confirmed the transfer, and passed an ordinance granting directly to the Athens Terminal Company all of the franchises which had been previously granted to Baldwin and Mackall, upon the same terms and conditions, with one exception which is not material to this case. The ordinance of the City of Athens required the paving of a portion of Foundry street, between Broad street and Hancock avenue, sixteen feet in width, so as to leave a six-foot sidewalk on the side of the street adjacent to the Foundry works, and the street being opposite the Athens Foundry and Machine Works property, about forty feet wide, leaving about thirteen feet between the curb of the paved way and the property line of the Athens Terminal Company. The track in Foundry street is to be laid between the property line of the Terminal Company and the curb of the paved way. The Foundry Company claims to own a fee in Foundry street only to the center thereof, and the Athens Terminal Company claims to own the fee in the other half of the street adjacent to its property; so that the track, when laid in Foundry street opposite the Foundry Works, will be laid entirely on the fee of the street owned by the Terminal Company. Both Washington and Clayton streets will be deflected near their intersection with Foundry street which is the terminus of each street. The ordinance provides that the city will do the necessary grading of Washington and Clayton streets. The Athens Terminal Company will pave those portions of Washington and Clayton streets which run through its property, and will open a new thoroughfare between Broad street and Hancock avenue, on the back of its property, and will pave the same. None of the tracks which lead off from Foundry street into the Terminal property will rest on any part of either Washington or Clayton street as deflected, but will be entirely upon the property of the Terminal Company. The Athens Foundry and Machine Works maintains that the City of Athens has no power to change and deflect Clayton and Washington streets; that it had no power to grant to Baldwin and Mackall the right to lay tracks in the streets; that it has no power to grant, either to private persons

or to a railroad company, the right to use the streets; and that the construction of the track in Foundry street and the deflection of Washington street will cause the plaintiff to suffer special damages, different in degree and kind from those suffered by the general public.

On the interlocutory hearing the court enjoined the Terminal Company from constructing and laying its tracks in Foundry street, opposite the Foundry Company's property, until the Terminal Company institute condemnation proceedings and ascertain the extent of injury to the Foundry Company, and pay or offer to pay whatever damages may be assessed; and refused to enjoin the deflection of Washington and Clayton streets, and the laying of the track in Foundry street not contiguous to plaintiff's property. Both the plaintiff and defendants excepted.

*Lawton & Cunningham, Erwin & Erwin,* and *H. S. West,* for Athens Terminal Company et al.

*John J. Strickland* and *E. S. Price,* contra.

EVANS, J. (After stating the foregoing facts.)

1, 2. A commercial steam railroad can not lay its tracks longitudinally along the streets of a city without the sanction of the General Assembly. This sanction must appear by express grant or necessary implication. *Daly* v. *Ga. So. R. Co.,* 80 *Ga.* 793 (7 S. E. 146, 12 Am. St. R. 286). Legislative sanction to devote a part of a street to railroad use is not given to a city by the grant of a general power to establish, change, and maintain its streets and alleys. Nor is this sanction given by section 17 of the act approved August 24, 1872, amending the charter of Athens (Acts 1872, p. 127), "That in all cases of encroachments on the streets, lanes, or alleys of said city, the mayor and council shall have power to remove the same upon reasonable notice, or permit, and sanction same for a fair and reasonable compensation in money, to be paid into the city treasury; said mayor and council having due regard to the interests of property holders who may be affected thereby." *Daly* v. *Ga. So. R. Co.,* supra. As the City of Athens had no charter authority to consent to the laying of a track longitudinally along its streets, the grant of such power to Messrs. Baldwin and Mackall was an ultra vires act, and void. But after the filing of the petition the mayor and council re-enacted the same ordinance, specifically granting to the Athens

Terminal Company the same powers, slightly modified, which by ordinance the city had previously attempted to give to Messrs. Baldwin and Mackall. Objection was made to the court considering either ordinance, on the ground that the first ordinance was void, and that the ordinance conferring on the Athens Terminal Company the same powers previously given to Baldwin and Mackall in a void ordinance was passed by the council of the City of Athens after the inception of the litigation, and was neither curative of the void ordinance, nor available in this suit as an independent municipal act. The court properly considered both ordinances as evidence. The last ordinance by express terms incorporated the provisions of the former, and it thus became a part thereof. The plaintiff was seeking to enjoin the Athens Terminal Company from doing the things authorized by the municipal authorities of the City of Athens. Although at the time the petition was filed the Athens Terminal Company may have had no right to do any of the acts complained of, for lack of municipal consent, the Terminal Company could urge, on the interlocutory hearing, the municipal consent procured subsequently to the filing of the petition. It is in the nature of a plea puis darrein continuance. So we come to the question whether the City of Athens could confer upon the Terminal Company the power to lay its railroad track longitudinally in Foundry street. As we have previously stated, before a commercial railroad company can lay its track along a street in a city it must have the authority, express or by necessary implication, of the General Assembly. This legislative sanction need not appear from the city's charter; it may be found in the general law, or in the charter of the railroad company applying for the use of the city's streets. *Almand* v. *Atlanta Con. St. Ry. Co.,* 108 *Ga.* 417 (34 S. E. 6). The Athens Terminal Company is incorporated under the general railroad law, and has all the powers therein conferred on a railroad corporation. *Bridwell* v. *Gate City Terminal Co.,* 127 *Ga.* 520 (56 S. E. 624). By the Civil Code, §2167, par. 5, a railroad company incorporated thereunder is permitted "to construct its road across, along, or upon, or to use any stream of water, watercourse, street, highway, or canal which the route of its road shall intersect or touch: *Provided,* no railroad shall be constructed along and upon any street or highway without the written consent of the municipal

or county authorities; and whenever the track of any such road shall touch, intersect, or cross any road, highway, or street, it may be carried over or under, or cross at a grade level or otherwise, as may be found most expedient for the public good," etc. This code section permits the longitudinal use of the street by the railroad company in a proper and lawful manner. *Almand* v. *Atlanta Con. St. Ry. Co.,* supra. It can not maintain a nuisance thereon, nor unreasonably obstruct the street, nor use the street as a yard, or for switching and drilling purposes. *Atlantic Ry. Co.* v. *Montezuma,* 122 *Ga.* 1 (49 S. E. 738). The Terminal Company disclaims in its answer any intention to improperly use Foundry street; and the question of improper use will arise only when it makes or attempts to make a use of the track not authorized by law.

3, 4. Although the General Assembly may empower a railroad company to occupy the streets of a town or city with the consent of the municipal authorities, yet such permission is subject to the constitutional restraint that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." While denying that the plaintiff will suffer any pecuniary injury to its property by the proposed improvements, counsel for the Terminal Company concede the plaintiff's right to recover, in an action of damages, loss or injury, if any, consequential upon the construction of the track and its contemplated use. But they insist that this is the sole remedy, and that the plaintiff has no right to enjoin the prosecution of the work until the damages are ascertained, and compensation therefor paid or tendered. In *City of Atlanta* v. *Green,* 67 *Ga.* 386, it was held, that, prior to the constitution of 1877, which contains the declaration that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid," municipal corporations were not liable for consequential damages resulting to property owners from raising or lowering the grade of streets, but were made so by the constitutional provision. Following this case is a multitude of decisions by this court, to the effect that consequential damages caused to the property of a citizen by the construction of a public work may be recovered, though no part of his property be actually taken. The meaning of the words, "without just and adequate compensa-

tion being first paid," came up in *Chambers* v. *Cin. & Ga. R.*, 69 *Ga.* 320, very soon after the adoption of the constitution of 1877. That was the case of a landowner seeking to enjoin a railroad company from proceeding to build its road through his land pending an appeal from the award of the assessors as to the damages; and it was held that the railroad company's effort to take property should be enjoined until it either paid or tendered the just value of the property taken. The fundamental law makes no distinction between damages resulting from the actual taking of the property, and damages consequential from the construction of a public work where the property was not actually taken. In either event payment or tender must generally precede construction of work.

Shortly after the pronouncement in the *Green* case, that if any owner of property be damaged by the grading of a street he may recover for such injury to his freehold, the question arose whether the grading of streets should be suspended by injunction because consequential damages would result to an abutting-land owner. In this case (*Moore* v. *Atlanta, 70 Ga.* 611) it was held that an injunction ought not to be granted to stop the operation of the municipal government and clog its wheels, and that the remedy of the abutting-land owner was an action for damages. The reasoning of the court was that if improvements in the highway were within the constitutional provision as to first paying damages, the power of municipalities to improve its streets would be destroyed, if before even repairing a street it must try with every property owner the question whether the improvements would help or hurt him; hence, ex necessitate rei, this provision of the constitution did not apply in the case of consequential damages to an abutting-land owner where the city graded its streets to make them more accessible or safer for passageway. Upon the theory that a street railway is a public convenience for passing along a city's streets, the principle of the *Moore* case has been extended to street railways. *Brown* v. *Atlanta Railway Co.*, 113 *Ga.* 462 (39 S. E. 71). But commercial steam railroads receive legislative sanction to use a city's streets from altogether different considerations than those which apply to street railways. The former constitute the great arteries of commerce, and of necessity must have continuous trackage that they may expeditiously serve the general public in the

transportation of passengers and freight. They traverse commercial centers, and are allowed to occupy with their tracks the city's streets in order that the flow of commerce may not be impeded by breaks in trackage. It would perhaps be less burdensome on the streets of a city to permit their longitudinal use by the railroad company in pulling a train of cars thereover, than to transfer the entire railroad traffic, both through and local, over the street in horse-drawn vehicles. Yet the service is not primarily intended to relieve the streets of the burden of travel; on the other hand, by hauling freight and passengers from distant points, commercial railroads subject the streets to additional burdens. Because of this and for other reasons it has been held that the laying of a track upon a street in a municipality for the purpose of operating a commercial steam railroad imposes on the streets an additional servitude. *A. & W. P. R. Co.* v. *A., B. & A. Ry. Co.,* 125 *Ga.* 530 (54 S. E. 736). One of the purposes of a street railway is to relieve the streets from congestion, by affording more rapid passage. . The necessity for the operation of a street-railway is largely a municipal problem, to be mainly solved by the municipal authorities. This is recognized by the constitution (art. 3, sec. 7, par. 20), which forbids the General Assembly from authorizing the construction of a street-passenger railway without the consent of the municipal authorities. The construction and operation of a street-railway was therefore included by the *Brown* case in the category of a municipal improvement of streets. Not so, however, with the commercial railroad. It is in no sense a local or municipal affair. The General Assembly has sanctioned its occupancy of a city's streets with the city's consent. The only effect of this legislative sanction is to allow it to pass through a . city along a street where the city consents thereto. If it will injure or damage property in its operation, the amount of such damage must be paid or tendered before the work can progress, just as if the question had arisen outside of a city.

It is contended that as the Terminal Company and the Foundry Company own the fee in the street fronting their respective properties, their property lines touch in the middle of the street; and as the track is to be laid on the half of the street contiguous to the Terminal Company's property, its construction should not be enjoined, because no part of the Foundry's property will be taken.

We have placed our decision on the ground, that, with the exception of instances like those·in the *Moore* and *Brown* cases, supra, the constitutional provision, that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid," applies alike to cases where property is taken, and where property is not actually taken but is consequentially damaged by the construction of a public work. It would not require specious argument, however, to support the proposition that to the extent of maintaining the integrity of Foundry street the abutting-land owners had such an interest in the whole street that the street can not be destroyed, or seriously impaired, or subjected to an additional servitude, without adequate compensation is first paid. See *Marietta Chair Co.* v. *Henderson*, 121 *Ga.* 399 (49 S. E. 312, 104 Am. St. R. 156); Barney v. Keokuk, 94 U. S. 324 (24 L. ed. 224).

The court found from the evidence that "the construction of the railroad track in Foundry street affects and interferes with the right of egress and ingress to the lot owned in fee simple by the Foundry Company, which is calculated thereby to inflict an injury to the lot itself." There was evidence to support this finding. "The construction and operation of a railway in a public street is a physical invasion of the easement of access of abutting-land owners, and is a damage to the property, within the meaning of the constitutional provision which declares that private property shall not be taken or damaged for public use without just compensation being first paid." *A. & B. Ry. Co.* v. *McKnight*, 125 *Ga.* 329 (54 S. E. 148). Hence it was not erroneous to enjoin the laying of the railroad track along Foundry street until the Foundry Company had been paid or tendered payment for any damages it might have sustained. *A. & W. P. R. Co.* v. *A., B. & A. Ry. Co.*, supra.

5. The plaintiff in error further insists, that the Foundry Company was well aware of the plan and purpose of the projectors of the enterprise; that its officers knew the railroad track would be laid in Foundry street; that large sums of money had been expended in the work of the general plan of improvement, with the knowledge of the Foundry Company, and without objection on their part; that for these reasons the Foundry Company is in laches, and has forfeited its right to invoke the equitable remedy

of injunction. Vigilantibus non dormientibus jura subveniunt is in hand will be manifest by a reference to the facts appearing in a most salutary maxim of equity. Its inapplicability to the case the record. The City of Athens, by an ordinance passed January 3, 1906, granted the privileges now claimed by the Terminal Company to Messrs. Baldwin and Mackall. This ordinance was void. Work was begun by them about July 1, 1906. The Terminal Company was chartered October 4, 1906. Baldwin and Mackall did not transfer their rights under the ordinance until about two months before the filing of the petition. And it was a month after the petition was filed before the ordinance was passed which conferred on the Terminal Company the same rights attempted to be conferred on Messrs. Baldwin and Mackall. Nothing was done by the Foundry Company to encourage these operations; on the other hand, the superintendent of the Foundry Company deposed he did not know the Terminal Company contemplated a line of railroad track along Foundry street until a few days before the application for injunction. Under these circumstances the judge could well conclude that the Foundry Company had not waived, by delay, its constitutional right to protect its property by demanding compensation for damages before the construction of the work from which the injury will result.

A motion was made to reopen the case because of an alleged misapprehension of fact by the court in announcing its decision on the interlocutory hearing. The court refused to reopen the case, and rendered a written judgment covering the various issues involved in the case. We have discussed these issues, and are in accord with the conclusions of the trial court. There was no error in refusing to reopen the case.

6 It is complained, in the cross-bill of exceptions, that the court erred in not enjoining the Terminal Company from interfering with Clayton and Washington streets. These streets afforded communication between Thomas and Foundry streets, which are parallel streets. There are other cross-streets connecting Thomas and Foundry streets. The Terminal Company owns the property on both sides of Washington and Clayton streets where these streets are proposed to be deflected. When application was made for injunction, these two streets had been so graded that they could not be used as connecting Thomas and Foundry streets.

The plan of improvements, as outlined in the ordinance of the city council of Athens, did not contemplate the closing of either Clayton or Washington streets, but that the course of the streets should be deflected near their entrance into Foundry street. The charter of Athens provides that "The Mayor and Council of the City of Athens shall have full power and authority to open, lay out, widen, straighten, or otherwise change the streets, lanes, and alleys in said city, whenever the said mayor and council shall see proper to exercise such power." Acts 1887, p. 583. This grant is sufficiently comprehensive to authorize the deflection of a street near one of its termini. *Trustees* v. *Atlanta,* 93 *Ga.* 468 (21 S. E. 74) ; *Patton* v. *Rome,* 124 *Ga.* 525 (52 S. E. 742). There was evidence before the court that these streets were not intended to be permanently closed, and that the plan of improvement outlined in the ordinance authorizing the improvement was intended to be carried out in good faith; and as the municipal authorities were empowered by the city's charter to change the course of the street, we see no error in the court's refusal to enjoin the Terminal Company in this respect.

*Judgment affirmed on both bills of exceptions. All the Justices concur, except Cobb, P. J., disqualified.*