## 4695. ADAIR, executor, *v.* SPELLMAN SEMINARY.

1. Exclusive jurisdiction to try cases respecting title to land is by the constitution of this State vested in the superior courts. Cases where the title is only incidentally involved, such as one for the recovery of damages for trespass on realty, possessory warrant, forcible entry and detainer cases, and a summary proceeding to abate a nuisance in a public street or a private way, are not "cases respecting title to land," within the meaning of the constitution. It would seem, however, that where in a summary proceeding to abate a nuisance it appears from the pleadings that the only real and substantial issue involved is one respecting title to realty, a court other than the superior court should hesitate to entertain jurisdiction.

2. Where streets and roads are marked on a plat of a tract of land, and lots are bought and sold with reference to the plat, not only those who buy lots abutting on a street or road laid out on the map, but all who buy with reference to the general plan or scheme disclosed by the plat, acquire a right of user in all of the roads and streets designated on the plat.

3. The stopping or impeding of a private way which has been opened and in use by those entitled to traverse it is a private nuisance, and may be abated by the summary proceeding provided for in sections 5329 et seq. of the Civil Code.

4. The summary proceeding provided for by the code is not available to remove an obstruction in an alleged private way which exists only on a plat or map and has never been opened or used as a way.

5. Power granted in the charter of a city "to open, lay out, to widen, straighten, or otherwise change streets, alleys and squares in the city" is broad enough to authorize the changing of a street so as to straighten it and remove from it pronounced irregularities, the termini of the changed portion of the street remaining the same, the distance between them being shortened and the changed street affording a more convenient way of travel to and from the same points reached by the old street. *Coker* v. *Railway Co.*, 123 *Ga.* 483 (51 S. E. 481), distinguished.

6. A private individual can not complain of a public nuisance, unless he shows some special damage accruing to him in which the public does not participate.

7. The evidence authorized the judgment entered by the city recorder in behalf of the defendant, and there was no error in overruling the petition for certiorari.

DECIDED OCTOBER 21, 1913.

Certiorari; from Fulton superior court—Judge Bell.   January 1, 1913.

*Rosser & Brandon, King & Spalding and Underwood,* for plaintiff.   *Hooper Alexander,* for defendant.

POTTLE, J.   On July 23, 1901, Forrest Adair, as executor of the last will of George W. Adair, filed in the recorder's court of the City of Atlanta a petition against Spellman Seminary, a corporation conducting an educational institution in said city, to abate certain alleged nuisances which the plaintiff averred the defendant had erected and maintained in certain streets over which the plaintiff had an easement.   The petition avers, that at the time of his death George W. Adair was the owner of two city lots known as numbers 10 and 11, according to a plat of what was formerly known as the James property, and consisting of about fifty acres of land, bounded on the north and east by Greensferry avenue, south by Chapel street, and west by Chapel and Lee streets; that on this plat the tract of land was subdivided into 140 lots, including lots 10 and 11, which were owned by George W. Adair and are in the control of the plaintiff as executor; that upon this plat, in addition to the streets bounding the land, there appeared the following streets running north and south, to wit:   Henry, Culver, Reynolds, Leonard, and Lizzie; and running east and west:   Ella, Keith, Phelps, Broomhead, and Leonard.   It is alleged that each and all of these streets are public streets of the City of Atlanta, and were such from the time they were laid out and during the period hereinafter mentioned.   The plaintiff complains that the defendant has erected a fence across Leonard, Reynolds, Keith, Phelps, and Broomhead streets, so as to obstruct the free use and enjoyment of these highways by the plaintiff and the public; that the effect of the erection of this fence is to enclose parts of Leonard and Broomhead streets, and the whole of Reynolds, Keith, and Phelps streets within one enclosure, and completely to stop the use of all of said streets and parts of said streets.   It is further averred that the defendant has erected certain buildings upon the tract, which buildings extend over and into and across certain of the streets above mentioned, so as to prevent the use of these streets by the plaintiff and the public. The plaintiff avers that he is entitled to use these streets as a citizen of Atlanta, and that he has sustained special injury not common to the public by reason of the fact that all of the lots embraced

within the James tract were sold with reference to these streets; that George W. Adair bought lots numbers 10 and 11, which were a part of this tract, with reference to these streets, which afforded more convenient and easy access to and from these lots to Greensferry avenue; and that by the closing up of these streets by the defendant, lots numbers 10 and 11 have been depreciated in value.

The defendant filed a special plea to the jurisdiction of the court, setting up that the streets which the plaintiff alleged had been obstructed by the defendant never were public streets of the City of Atlanta and never were open streets or ways; that the plaintiff's right, if he had any, is a mere contractual easement in land, and that the question sought to be raised by said proceeding is one involving title to land, being brought for the purpose of testing the question as to whether the defendant has such right and title to the land covered by the streets mentioned as would authorize it to close these streets, and such a proceeding is, under the constitution and laws, cognizable only in the superior court of Fulton county. Subject to the plea to the jurisdiction, the defendant demurred and answered. The demurrer was overruled and an order was passed reciting that the special plea would not be considered as a plea to the jurisdiction, but the defendant could file the same as a part of its defense. The defendant answered and set up the following defenses: (1) that the alleged streets obstructed by it were never opened or traveled or used and accepted by the public as streets; (2) that neither the plaintiff nor his testator ever had acquired the right to use any of the alleged streets, except that the public had occasionally used a part of Leonard and Broomhead streets for a passageway through the defendant's property; that in closing the Leonard-Broomhead way the defendant acted with the consent of the public and every person interested therein, and at the same time opened a better and shorter way through its property and around it from the same point on Ella street northward to Greensferry avenue; (3) that the entire tract occupied by the defendant has been for a number of years openly and notoriously in its possession and held by it as one piece of property, with no streets through it except the Leonard-Broomhead way, which has been straightened as above mentioned; that more than a year before the filing of the petition the defendant entered upon an extensive scheme of building and improvement,

and in pursuance thereof and before any objection was made by the plaintiff, had laid out and expended on the buildings complained of in the plaintiff's petition more than $100,000, with no suggestion by the plaintiff of any rights claimed by him or his testator; that the defendant's expenditure for improvements on said land represents an outlay of more than $300,000, nearly all of which would be rendered useless for the purposes for which it was expended, if the prayers of the petition were granted; that the circumstances under which the streets were closed and the improvements made are such as to estop the plaintiff from interfering at this time with the progress of the work; (4) that George W. Adair, owner of lots numbers 10 and 11, without the consent of the defendant, closed up a part of Chapel street which was a part of the James plat, and his estate is now in possession of a part of the street so closed. The defendant avers that the closing up of this part of said street by George W. Adair is evidence of his assent to the abandonment of the street scheme as indicated by the plat, and operates to estop his executor from complaining of the obstruction of other streets by the defendant.

The case came on to be heard before the recorder in 1901, and, after the evidence was introduced, he rendered a judgment in favor of the defendant, upon the ground that under the evidence no nuisance existed. The plaintiff sued out a writ of certiorari in the latter part of 1902. The case was continued from time to time in the superior court, and finally on January 1, 1913, a judgment was entered overruling the certiorari. The plaintiff excepted. The evidence before the recorder was voluminous and somewhat conflicting. From the evidence it appeared that about the year 1879, John H. James caused a plat to be made of the fifty-acre tract described in the plaintiff's petition, divided it into 140 lots, and laid out, as a part of the plat, Lizzie, Ella, Leonard, Henry, Keith, Phelps, and Broomhead streets. The tract was bounded by Chapel and Lee streets and Greensferry avenue, all of which were original highways, were no part of the plat, and have not been obstructed in any way by the defendant. The property occupied by the defendant was acquired by it as an educational institution, at different times, either from James or from various persons holding under him. The conveyances to the Seminary covered a period beginning in 1883 and extending down to 1899. In each deed the property

conveyed was described by lot numbers with reference to the James plat and the streets which had been laid out thereon. The evidence abundantly authorized, if it did not demand, a finding by the recorder that none of the streets laid out on the James plat, except Leonard and Broomhead, had ever been actually used as streets, and that certainly the dedication of them had never been accepted by the public. It seems, from the evidence, that what is referred to in the brief as the Leonard-Broomhead way, which consisted of Leonard street and part of Broomhead street, had been used for some years as a way from Ella street, northward to Greensferry avenue. For the purposes of this case it may be considered that the evidence demanded a finding that this Leonard-Broomhead way was a public street. On June 15, 1900, the city council of Atlanta authorized the defendant to straighten Leonard street from Ella to Broomhead, and Broomhead from Leonard to Greensferry avenue, by moving the street eastward 100 feet to the edge of the Spellman Seminary property, the new street to be the same width as the old street and to be paved by the defendant with rock, sand, or chert. In pursuance of this permission the defendant made a change in the streets, starting at the point on Chapel street where the old street touched it and running northward into Greensferry avenue, thereby straightening the street and affording easy and convenient access to Greensferry avenue along the new street. A part of the fence which the plaintiff complains was built across several of the streets had been erected prior to the purchase of the land by the defendant, and portions of the fence were built and repaired by the defendant after its purchase. George W. Adair died in 1899, and shortly thereafter the plaintiff qualified as the executor of his will. Some time in 1900 the attention of the plaintiff was called to the fact that the defendant was constructing buildings projecting into certain of the streets. He immediately complained to the defendant, and negotiations and conferences covering a period of several months were had. No adjustment having been reached, the present proceeding was instituted.

1. The exhaustive and able briefs prepared by counsel for both sides have greatly lessened the labor of this court in examining the record and the law touching the various questions which have been presented for our consideration. The recorder did not in terms adjudge that he was without jurisdiction, though his general judg-

ment in favor of the defendant was based upon the issues raised by the petition and all of the defendant's pleadings. But in view of the fact that the special plea to the jurisdiction was filed and a general judgment entered in favor of the defendant, if this judgment was right for any reason, it ought to stand. The question raised by the plea to the jurisdiction is an interesting one. Exclusive jurisdiction to try "cases respecting titles to land" is vested by the constitution in the superior courts. Civil Code, § 6510. Many cases arise, however, where title is only incidentally involved, and jurisdiction may be entertained by other courts. For instance, an action for damages for trespass to realty may be brought in a city court, and frequently it becomes necessary, as an incident to the plaintiff's case, to pass upon the question of title. And so in possessory warrant and forcible entry and detainer cases we say that the question of title is not involved; but it may, and frequently does, become necessary to pass upon the question of title as an incident to the issues involved. Both from the pleadings and the evidence in the present case it appears that the defendant is standing squarely upon its claim of title to the land covered by the streets upon which the alleged obstructions were erected. There is nothing in the evidence to impeach the bona fides of the defendant's claim of title. There could be no question that the obstructions were nuisances, and hence on this point there could be no issue; so that really the controlling question to be decided by the recorder was whether or not the defendant had valid title to the streets, superior to the plaintiff's alleged right of user. This being so, were it not for certain decisions of the Supreme Court, which apparently lay down a contrary rule, there would be much force in the argument in behalf of the defendant that the recorder was without jurisdiction to pass upon the issues raised by the pleadings in this case. A court ought to hesitate to adjudicate title to land upon summary proceedings such as are now involved. Wood on Nuisances (3d ed.), § 843.

2. It is unquestionably true that when George W. Adair purchased lots 10 and 11 he acquired an interest in the streets designated on the James plat. "It is not only those who buy land or lots abutting on a street or road laid out on a map or plat that have a right to insist upon the opening of the street or road; but where streets and roads are marked on a plat and lots are bought

and sold with reference to the plat or map, all who buy with reference to the general plan or scheme disclosed by the plat or map acquire a right in all the public ways designated thereon and may enforce the dedication. The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed, as it well may be, that the public ways add value to all the lots embraced in the general scheme or plan. Certainly, as every one knows, lots with convenient cross streets are of more value than those without, and it is fair to presume that the original owner would not have donated land for public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not, therefore, to be permitted to take it from them by revoking part of his dedication." 1 Elliott on Roads and Streets (3d ed.), § 132; 9 Am. & Eng. Enc. Law (2d ed.), § 57. The law as thus announced is in accordance with the decisions of our Supreme Court. *Bayard* v. *Hargrove,* 45 *Ga.* 343; *Ford* v. *Harris,* 95 *Ga.* 97 (22 S. E. 144). Where a street which has been used by the public has been abandoned, the fee in the soil reverts to the owners of the abutting lots. *Bayard* v. *Hargrove,* supra; *Harrison* v. *Augusta Factory,* 73 *Ga.* 447. If, therefore, the case is otherwise made out, the plaintiff has shown such a right to the use of the streets designated on the plat as to entitle him to maintain the proceeding.

3. The law now in the code on the subject of abatement of nuisances was taken substantially from the act of 1833, the only material change in the law having been made by the act of 1892, which authorized their abatement before a recorder in cities having a population exceeding 20,000. See Acts 1833, p. 143; Acts 1892, p. 64; *W. & A. Railroad* v. *City of Atlanta,* 113 *Ga.* 555 (38 S. E. 996, 54 L. R. A. 294); *Peginis* v. *City of Atlanta,* 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716). The act of 1833 provides: "All nuisances not here mentioned, which tend to annoy the community, or injure the health of the citizens in general, or to corrupt the public morals, shall be indictable, and punishable by fine, or imprisonment in the common jail of the county, or both, at the discretion of the court. And any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public health and safety, or tends greatly to corrupt the manners and morals of the people, may be abated and sup-

pressed by the order of any two or more justices of the peace of the county, founded upon the opinion and verdict of twelve freeholders of the same county, who shall be summoned, sworn and empanelled for that purpose; which order shall be directed to, and executed by the sheriff of the county or his deputy." This act, with the amendment of 1892, has been carried forward in the code and is now embraced in sections 5329 et seq. of the Civil Code. It will be observed that the act undertakes to declare what nuisances may be summarily abated; they are such as tend to the immediate annoyance of the citizens in general, are manifestly injuries to the public health and safety, or tend greatly to corrupt the manners and morals of the people. From the plain language used, it would seem that the only nuisances which can be summarily abated under the statute are public nuisances; that is to say, nuisances which affect the citizens in general, and not those which merely injure the property of one of the citizens without affecting the public in general. · And this seems to have been the view which the Supreme Court took of the law in one of the earlier decisions. *Vason* v. *South Carolina R. Co.*, 42 *Ga.* 631. In that case a proceeding was instituted to abate as a nuisance a railroad which was operated on one of the public streets of Augusta. In discussing the question, Judge Mc-Cay refers to the distinction between a public and private nuisance, and adds: "But our proceeding to abate is only another mode of doing what it was one of the principal objects of an indictment, at common law, to do, to wit: to abate the nuisance. It was a part of the judgment of the court, on conviction of the offender, if the nuisance was continuous, to direct the sheriff to abate the nuisance: Wharton's Amer. Crim. Law, sec. 2369; 2 Rolle's Ab. 84, sec. 15; 2 Burn's Jus. 222; 1 Hawk's Bl. Cro. [?] 365; Taggart v. The Commonwealth, 9 Harris, 527. Indeed, there was no other way by which a public nuisance could be abated by process of law. There was an old writ, called an assize of nuisance, by which a private nuisance against a freehold might be abated, but as to public nuisances an indictment was the only remedy, except by the act of a person taking the law in his own hands: 2 Bouv. Inst. 577, 579. Our statute, defining an abatable nuisance, defines an indictable nuisance, save that it adds 'immediate,' 'manifestly,' and 'greatly,' before the words, 'annoyance,' 'public health' and 'public morals,' and was evidently intended not to authorize the abatement of an act which

was not indictable, but to authorize the abatement of indictable nuisances of peculiar virulence, without waiting for an indictment: section 4023, 4478, Revised Code. It is a public proceeding, in behalf of the public, and, according to section 2946 of the Code, it ought to be in the name of the State. It is true that sections 4023 and 4024 do not point out what particular form shall be used, nor would we insist that any particular form is necessary; but the whole scope and design of the law indicates that it is a proceeding in behalf of the public, to cure a public wrong."

Most of the language thus used by Judge McCay was obiter, because the ruling made in the case was that the railroad, having been legally authorized to be constructed, could not be abated as a nuisance. However, in *Ruff* v. *Phillips,* 50 *Ga.* 130, it was decided that a private nuisance may be abated under the provisions of the act of 1833. The decision in this case was also delivered by Judge McCay, and the conclusion that a private nuisance could summarily be abated was based upon the language of section 4027 of the Code of 1868 and 4098 of the Code of 1873, to the effect that "a public nuisance may be abated on the application of any citizen of the district, and a private nuisance on the application of the party injured." The law as thus stated appears in section 4908 of the Code of 1882 and 4766 of the Code of 1895 and 5338 of the Code of 1910. In *Salter* v. *Taylor,* 55 *Ga.* 311, it was held that the stopping or impeding of a private way is a private nuisance, and may be abated by a summary proceeding before two justices of the peace and a jury under the code. In *Powell* v. *Foster,* 59 *Ga.* 790, it was held that the code furnished a summary remedy for the abatement of nuisances, public and private. See, also, *Hart* v. *Taylor,* 61 *Ga.* 156; *Holmes* v. *Jones,* 80 *Ga.* 659 (7 S. E. 168); *Broomhead* v. *Grant,* 83 *Ga.* 451 (10 S. E. 116); *Savannah Ry. Co.* v. *Gill,* 118 *Ga.* 737 (45 S. E. 623). In the case last cited it was held that "while section 4760 in terms provides only for the abatement of a public nuisance in the manner therein specified, it has been several times held that a private nuisance may be abated under that section." It must therefore be accepted as the settled law of this State that a private nuisance may summarily be abated by the same procedure as that provided for the abatement of a public nuisance.

Counsel for the defendant in error insists that all of the decisions of the Supreme Court from *Ruff* v. *Phillips,* supra, to *Broomhead*

v. *Grant,* supra, are upon their facts distinguishable from the present case, for the reason that in none of those cases was there any real contest over the title; that the party complaining of the nuisance was in the present enjoyment, possession, and control of the property, and the only question at issue was whether or not the thing complained of was in fact a nuisance and abatable as such. It is also pointed out that in *Savannah Ry. Co.* v. *Gill,* supra, the road obstructed was a public road, and no question as to the abatement of a private nuisance was involved. We are not at liberty to thus narrow the scope and effect of the decisions of the Supreme Court holding that an obstruction of a private way may be summarily abated by the remedy which the plaintiff invoked in the present case. There is, to our mind, much force in counsel's contention, but we are constrained by the above-cited decisions of the Supreme Court to a contrary conclusion.

4. It does not follow, however, from what has been said, that the plaintiff was entitled to an order of abatement. The evidence abundantly authorized a finding by the recorder that none of the streets, save Leonard and Broomhead, had ever been actually opened and used as streets. The mere platting of the streets upon paper did not amount to a dedication of the streets to the public use, and the dedication was not complete unless the public authorities received and adopted the streets. *Parsons* v. *Atlanta University,* 44 *Ga.* 529. In *Bryans* v. *Almand,* 87 *Ga.* 564 (13 S. E. 554), it was held: "While the municipal authorities of a city or town may, on complaint of a citizen, cause an obstruction to be removed from any public street in actual use by the public, yet where a street exists only in the plan of such city or town, and has not been actually opened, worked by the municipal authorities, and used by the public, but, on the contrary, has been in private occupation for thirty or forty years, this mode of procedure is not available." This ruling was reaffirmed in *Robins* v. *McGehee,* 127 *Ga.* 431 (56 S. E. 461). In the opinion in that case it was said: "The present proceeding is not intended to settle the title as a primary issue; indeed title is only incidentally involved, if at all. It is founded upon the hypothesis that a street has been laid out and opened, and has been obstructed. Any permanent structure in a street which materially interferes with travel therein is a nuisance per se. *Mayor of Columbus* v. *Jaques,* 30 *Ga.* 506; *City Council of Augusta* v. *Rey-*

39

*nolds,* 122 *Ga.* 754 [50 S. E. 998, 69 L. R. A. 564, 106 Am. St. R. 147]. Under some circumstances even a private individual may abate a common nuisance which obstructs his individual right, by removing it to enable him to enjoy that right. Brown *v.* Perkins, 12 Gray, 89. The positive obstruction of a public street may be abated by indictment or by injunction. Elliott on Roads and Streets, §§ 662-664. The rationale of the principle that an obstruction in a street may be summarily abated is upon the theory that the obstruction of a public street is a nuisance. It is not until a street has been defined by survey and laid out and opened by work that it becomes a street. There must be a street to be obstructed, before the structure alleged to be an obstruction amounts to a nuisance. This principle was recognized in *Bryans* v. *Almand,* 87 *Ga.* 564 [13 S. E. 554], where it was held that 'While the municipal authorities of a city or town may, on complaint of a citizen, cause an obstruction to be removed from any public street in actual use by the public, yet where a street exists only in the plan of such city or town, and has not been actually opened, worked by the municipal authorities and used by the public, but, on the contrary, has been in private occupation for thirty or forty years, this mode of procedure is not available.' The error into which the learned judge inadvertently fell was in confusing a proceeding to enjoin a summary abatement of an obstruction of a street with a contest between a sovereign political subdivision (municipal corporation) and an individual over the ownership of the land. In the former the issue is whether a street in the actual use of the public has been obstructed, while in the latter the issue is that of title. The cases are altogether dissimilar, and are controlled by rules of law entirely different." These two decisions seem to us to be decisive of the question of the plaintiff's right summarily to have removed the obstructions in any of the streets except Leonard and Broomhead. They are clearly distinguishable from the earlier decisions above cited, to the effect that the summary remedy provided by the code may be employed to remove an obstruction from a private way. This is true where the way is actually in existence and being used for travel, but under the decisions in *Bryans* v. *Almand* and *Robins* v. *McGehee,* the rule is altogether different where the way is a mere paper street which has never been opened or used for travel and which exists only on a plat or map of the

property surveyed and subdivided into lots. In such a case the summary method of abatement is not available, but the injured party must resort to some other form of action to obtain redress.

5. As to the Leonard-Broomhead way the plaintiff insists that neither the consent by other property owners to the closing of it, nor the permission granted by the city council of Atlanta, conferred upon the defendant any right as against the plaintiff to change the street. Certainly it is true that, George W. Adair having at the time of the purchase of his lots obtained a vested right in the use of this street, the consent of other adjoining property owners for it to be closed can not affect him. The charter of the City of Atlanta provided that "The said mayor and general council shall have full power and authority to open, lay out, to widen, straighten, or otherwise change, streets, alleys, and squares in the City of Atlanta." Acts 1874, p. 131, sec. 60. "This grant is comprehensive enough to embrace the alteration of a street in any respect, whether on, below or above the surface of the earth." Trustees v. City of Atlanta, 93 Ga. 468, 474 (21 S. E. 74). The plaintiff contends that under the decision of the Supreme Court in Coker v. Atlanta, K., & N. Ry. Co., 123 Ga. 483 (51 S. E. 481), the City of Atlanta had no power to authorize the defendant to change Leonard street. In that case Coker filed a petition to enjoin the city and the railway company from closing a street known as Waverly place. The city proposed to abandon Waverly place as a street and to convey land occupied by it to the railway company and change the location of Waverly place so that it should occupy a strip of land belonging to the railway company of equal width and length, lying some twenty-six feet south of the southern boundary of Waverly place, where it connected with Central avenue, and some thirty feet south of the point where its southern boundary touched Washington street. In other words, the proposition was to move Waverly place bodily over eighty-six feet in a southerly direction and deposit it upon the lands of the railway company, over twenty-six feet distant from its extreme southern boundary. As stated in the opinion of the Supreme Court: "The journey involves eighty-six feet of travel, the street being sixty feet wide and every inch of it journeying southward; none of it is to remain at its present abode, but it is in its entirety to seek other quarters provided for it further down Washington street. The proposed

'change' in Waverly place is one of location or residence, and after it moves there will be nothing to identify it but its name; for the ordinance contemplates that all luggage, in the shape of sidewalks and other personal effects, shall be left behind." It was held that the city had no power under its charter to thus abandon Waverly place and devote it to a purpose inconsistent with its use by the public. In *Adair* v. *Atlanta,* 124 *Ga.* 288 (52 S. E. 739), *Coker's* case was discussed, and it was there said: "The case of *Coker* v. *Railway Company,* 123 *Ga.* 483, is not in any sense in conflict with what is here ruled. There it was proposed virtually to abandon a street and close it for all time to the public. For a brief time a substitute was to be provided in the form of an improvised parallel street which was to furnish an outlet for the travel which would have gone over the street which it was proposed to close, but the agreement between the city and the railroad company contemplated that eventually the new street should be given back to the railroad company, while no substitute was provided to take its place. It was held that the power to 'open, lay out, to widen, straighten, or otherwise change' streets contained in the city's charter did not comprehend the power to make the changes indicated. Here there is no question of abandoning a street or of changing its course. The public will have the same thoroughfare open to it that it has to-day. Its convenience will not be lessened, nor the distance one will have to go between any two points increased in the slightest degree by the proposed improvement. The only difference will be that instead of going over a dirt surface it will pass over a metal viaduct."

In *Patton* v. *City of Rome,* 124 *Ga.* 525 (52 S. E. 742), it was held: "Under legislative authority granted to a municipality in its charter to 'open, lay out, to widen, straighten, or to otherwise change streets, alleys, and squares in said city,' the city may vacate and sell to an abutting-land owner, a private individual, a strip or part of a street, which strip will be thereafter closed to the use of the public, where it appears that the selling and closing of the strip or tract will have the effect to straighten and make more uniform in width the street from which the tract is taken and sold, without having the effect to close or prevent the free use by the public of said street." This decision is direct authority for the proposition that the power granted to the City of Atlanta to "widen, straighten, or otherwise change streets" is broad enough to author-

ize it to change a street so as to make it more uniform in width and appearance, and to straighten it so it will be free from pronounced irregularity in shape. In *Athens Terminal Co.* v. *Athens Foundry Works,* 129 *Ga.* 393 (58 S. E. 891), it appeared that the power of the City of Athens over its streets was substantially the same as that conferred upon the City of Atlanta. There an injunction was sought to restrain the Athens Terminal Company from changing the course of Washington and Clayton streets in the City of Athens, under permission so to do from the city. The court said that the plan of improvements as outlined in the ordinance of the city council of Athens did not contemplate the closing of either Clayton or Washington streets, but that the course of the streets should be deflected near their entrance into Foundry street. It was expressly held that the charter of the city was sufficiently comprehensive to authorize the deflection of a street near one of its termini. It appears from the evidence in the present case that under the permission granted by the city council, the defendant straightened the Leonard-Broomhead way and in so doing moved it eastward about 100 feet. The new street as thus changed touched Chapel street at the same point as the old street and, Ella street immediately north of Chapel was extended eastward so as to connect with the new street. The old street was irregularly shaped and 999 feet long; the new street is comparatively straight and is 829 feet long, and begins and ends at the same point that the old street did. The City of Atlanta had full power, we think, to authorize this change. The street was not abandoned entirely as was Waverly place, referred to in the decision in *Coker's* case, supra. The termini of the street remained the same. It was merely changed and straightened, and, under the evidence, afforded more direct and convenient access to Greensferry avenue from Chapel and Ella streets than the old street did. This improvement comes well within the charter power of the city to straighten or otherwise change the streets of the city.

6. Even if this had been a proceeding brought in behalf of the public, to require the old route traversed by the Leonard-Broomhead way to be opened, no case would have been made out for the plaintiff. Under the evidence the recorder was not obliged to find that any special damage flowed to the plaintiff from the change in Leonard street. In order for a private individual to complain of

a public nuisance, he must show some special damage accruing to him in which the public does not participate. Civil Code, § 4455; *Adair* v. *Atlanta,* supra; *East Tenn. &c. Ry. Co.* v. *Boardman,* 96 *Ga.* 358 (23 S. E. 403) ; *Ison* v. *Manley,* 76 *Ga.* 804. The new street which is paved and maintained as a convenient highway from Chapel to Greensferry avenue affords the plaintiff convenient access from his property along Ella and Chapel streets to Greensferry avenue. It is difficult to understand how any special damage could result to the plaintiff from this change in Leonard street, but conceding that the evidence would have authorized the finding of special damage, certainly it did not demand it, and upon the case here, we must take that view of the evidence which is most favorable to the party who prevailed in the court below.

7. We attach but little importance to the plea of estoppel set up by the defendant. Under the testimony for the plaintiff he was not estopped to proceed to abate some of the obstructions mentioned in his petition, nor would the mere fact that his testator had closed up a part of Chapel street estop the executor from having obstructions in other streets removed. The remedy of the persons injured by the closing of Chapel street, if they have any, would be to proceed against the plaintiff to require him to open it. Neither in law nor in morals do two wrongs make a right. Upon a careful consideration of the whole case, we are clearly of the opinion that the judgment of the recorder was right and that the judge of the superior court properly overruled the certiorari.     *Judgment affirmed.*