*John A. Fort,* for plaintiff. *R. L. Maynard,* contra.

---

ASHFORD *et. al. v.* WALTERS.

1. One who conveys a tract of land to another, with representations that such land has certain means of ingress and egress, is estopped thereafter to deny the existence of such easement, although such roadway may not be contiguous to the property purchased.

2. In a sale of land such as just referred to, the obstruction of a public highway theretofore used as a street and by the plaintiff as a means of access to his property, which, though not contiguous thereto, was near by, amounted to a continuing nuisance and authorized the grant of an interlocutory injunction.

3. Under the evidence adduced upon the hearing, the chancellor did not abuse his discretion in granting the relief prayed for.

No. 4475. APRIL 20, 1925.

Injunction. Before Judge E. D. Thomas. Fulton superior court. June 23, 1924.

*Spalding, MacDougald & Sibley,* for plaintiffs in error.

*Branch & Howard, J. L. Mayson, J. M. Wood,* and *E. G. Jackson,* contra.

RUSSELL, C. J.   On January 3, 1920, A. C. Walters purchased a certain tract of land containing 6.14 acres from Messrs. Ashford, Hawkins, and Spalding. In the deed the land was described as follows: "All that tract or parcel of land lying and being in the City of Atlanta, and being in land lots fifty-three (53) and fifty-four (54) of the seventeenth (17) district of originally Henry, now Fulton County, Georgia, described as follows: beginning on the east side of North Boulevard at the district line between the seventeenth (17) and fourteenth (14) district of said county, and running thence east along said district line seven hundred and ninety-four and eight tenths (794.8) feet to an iron pipe at the southwestern line of the right-of-way of the Southern Railway, thence northwesterly along the southwestern line of said right-of-way thirty-seven and one half (37-½) feet from and parallel with the center line of the old Atlanta and Charlotte Air-Line Railway

track (now the main track of the Southern Railway) to Virginia Avenue, thence westerly and southerly along the line of Virginia Avenue ·and following the south prong of Virginia Avenue to the east side of North Boulevard, thence southerly along the east side of North Boulevard to the beginning point; subject to the easements and right of use and occupancy by the Georgia Railway & Power Company along said Virginia Avenue from the right-of-way of the Southern Railway to North Boulevard, as shown by the map or blueprint thereof hereto attached and made a part hereof; and also subject to the right of the Southern Railway to slope the bank along the railroad front as shown by a conveyance made to said railway by said Ashford, Spalding, and Hawkins. . . The quantity of land contained in this conveyance clear of said easements and right of use and occupancy of Georgia Railway and Power Company is six and fourteen hundredths (6.14) acres. No warranty is made as to the property shown on said map as used and occupied by the Georgia Railway & Power Company; but the title is conveyed, subject to said easements and right of use and occupancy, to all the land between said six and fourteen hundredths (6.14) acres and Virginia Avenue. Between the Southern Railway and North Boulevard Virginia Avenue forks and enters North Boulevard by two forks or prongs, and it is agreed and understood that the property hereby conveyed extends to the south fork or prong and not to the north fork or prong of Virginia Avenue."

The plaintiff, Walters, asked an injunction to prevent the defendants from closing up the north prong of Virginia Avenue so as to obstruct and prevent his use of this means of ingress and egress to his property as it existed at the time he purchased it. The employees of the defendants had blocked the entrances to the north prong, both at Virginia Avenue and at North Boulevard, with substantial fences which absolutely debarred the use of the north prong, in pursuance of an ordinance passed by the mayor and council of the City of Atlanta, abandoning it and providing a wider exit by means of the south prong of Virginia Avenue. Upon the hearing the trial judge granted an interlocutory injunction as prayed by the plaintiff, and the defendants excepted to this judgment. They contend that the judge should have refused the injunction, because: (1) The plaintiff did not acquire, and does not own, any private easement in that part of Virginia Avenue

designated as the north fork which was abandoned and closed up by the City of Atlanta. (2) The property of the plaintiff, acquired from the defendants, does not abut on the street so closed up and abandoned. (3) The action of the City of Atlanta in closing up and abandoning the north fork of Virginia Avenue extinguished all rights of all persons in said street, except those who owned property abutting thereon. (4) At the time the plaintiff purchased the property described in his petition, the north fork of Virginia Avenue, which has been closed up and abandoned by the City of Atlanta, was a paved public street, and the defendants, or either of them, had no right, authority, or power to convey any interest therein to the plaintiff, and he did not and could not acquire any easement in a city street, except such as arose to him by operation of law on account of his being or becoming an abutting-property owner on such public street. (5) The undisputed evidence shows that the plaintiff has an ample and an increased facility in and upon the only part of Virginia Avenue upon which his property abuts, and is benefited, instead of damaged, by the closing of that part of the street known and designated as the north fork or prong of Virginia Avenue. (6) The City of Atlanta has under the law, by virtue of the charter powers conveyed to it by the legislature of the State of Georgia, full and complete authority to close up and abandon the street in question; the discretion to do so is entirely with it; and under the method prescribed by the statute the plaintiff had a full and ample opportunity to be heard by virtue of the published notice, and is bound by the action of the mayor and council of the City of Atlanta.

It will be observed that the property abutted that of the railway company and the street-car line, and therefore was especially valuable for manufacturing or storage purposes on account of its accessibility. The purchase-price was $20,000. It appears that at the time of the purchase what is now Virginia Avenue (and it was then called Virginia Avenue though located outside the limits of the City of Atlanta) was open and had been used by the public generally as a highway for several years. It further appears that Virginia Avenue entered North Boulevard by two prongs, one known as the north and the other as the south prong, and that the north prong was something over 150 feet nearer to Tenth Street (which runs in an easterly and westerly direction) than the south

prong, and was much nearer a right angle than the south prong, which entered North Boulevard at an acute angle. The evidence seems to be uncontradicted that Tenth Street is a much used thoroughfare for crossing the Southern Railway and for connecting the property on the east and west sides of that railway for convenience of traffic of all kinds. The property purchased by the plaintiff did not abut the north prong of Virginia Avenue, but this prong furnished the most direct route for reaching Tenth Street from by far the greater portion of his purchase, and contributed to make his property far more accessible for all public purposes than if the north prong of Virginia Avenue had not existed at the time he bought. Some point is made that both prongs of Virginia Avenue were donated and had cost the public nothing; but this is of no legal consequence, since it appears that both prongs had been worked and used for the public convenience for more than seven years. *Johnson* v. *State,* 1 *Ga. App.* 195 (5) (58 S. E. 265). The question is, can the vendors of the land in question, under the pleadings and evidence in this case, assert such a right as will defeat the right of the purchaser to use the north prong of Virginia Avenue and to enjoy the easement he was induced to believe he would enjoy at the time he purchased the land?

1. In *East Atlanta Land Co.* v. *Mower,* 138 *Ga.* 380 (75 S. E. 418), the easement claimed, instead of being one provided for purposes of ingress and egress, was the use of certain parks which had been made one of the bases of the sale and purchase. As to this, Mr. Justice Hill, delivering the opinion of the court, after quoting section 4171 of the Code, says: "But whether it is a case of dedication to a public or to a private use, the plaintiffs are asserting their right to an easement in the parks in controversy; and the result is the same to the plaintiffs [that is, whether the use is public or private], so far as their right to an easement in the parks is concerned. In the view we take of the case, if the lots were sold with reference to the plats which contained a delineation of the parks, and the original purchasers bought with reference thereto, the *seller* is estopped from setting up a claim adverse to the right of the private individuals, or their assigns, who so bought, or to the right of the public to use the parks, if there has been a dedication and acceptance." Quoting from 3 Dill. Mun. Cor. (5th ed.) § 1107, Mr. Justice Hill proceeds: "A consummated intent on the

23

part of the owner to dedicate is all that is required, and such intent may be shown by parol evidence of declarations and of acts in pais which unequivocally establish it. It may, we think, truly be affirmed that the doctrines of our law on this subject, as fashioned and settled by judicial tribunals, though in many respects seemingly anomalous, are characterized by practical wisdom, and are beneficent in their operation." Regardless of the rights of a municipality (and that question is not raised or involved in the case sub judice), it has, we think, been well said, in 1 Elliott on Roads and Streets (3d ed.), § 128, "Dedication may be established against the *owner* of the soil by showing that he has platted the ground, representing streets and alleys on the plat, and has sold lots with reference to it, or by showing that he has adopted a map or plat made by public officers, or other persons, or by showing that he has sold lots describing them as bounded by a street or road. . . Ordinarily, a sale of a single lot with reference to the plat will complete the dedication." As we understand it, dedication is not involved in this case; but the contention is, that, since the north fork of Virginia Avenue has been abandoned by the City of Atlanta, the right of the plaintiff to enjoy the easement in contemplation of which he purchased the property falls, because the public street has been abandoned. But reference to the title "Estoppel in Pais" in Bouvier's Law Dict., 1 Elliott on Roads and Streets, § 146, the rulings of this court in *Schreck* v. *Blun,* 131 *Ga.* 489 (62 S. E. 705), and *Mayor etc. of Macon* v. *Franklin,* 12 *Ga.* 239, as well as the quotation from the decision of this court in *East Atlanta Land Co.* v. *Mower,* supra, make plain the proposition that a vendor of land who sells the same under either an oral or written representation as to its value as dependent upon its accessibility is forever estopped to deprive, for the personal benefit of the vendor, him who purchased the land of the use which the vendor represented he was entitled to enjoy. As said by McCay, J., in *Bayard* v. *Hargrove,* infra, "The owner of the land has parted with *his* right *ever* to assert his right to the soil to the injury of the easement."

It may be conceded that the plaintiff, A. C. Walters, did not acquire and does not own a private easement in the north part of Virginia Avenue which the defendants are seeking to close, but it does not follow from that that he is not entitled to derive the

same benefits from the continuance of the north fork of Virginia Avenue as he was led to believe he would receive at the time he purchased this property. He is not restricted to a private use; he is entitled to enjoy all the benefits, not only of the individual use of the north fork of Virginia Avenue as a convenient means of ingress and egress to and from the property he bought, but he is entitled also to the consequential benefits which accessibility may confer by the increased value of what he bought, should he wish either to sell or to rent. We take it to be well settled that one who purchases property with a view to plainly apparent advantages of location and accessibility which are necessarily and consciously operative upon the mind of the vendor in fixing the price can not be taken advantage of by the vendor at least. Whatever may be the rights of a municipality in requiring a sacrifice of a vendor, as of any other citizen for the public good, upon every sound principle of law as well as morals a vendor is estopped to practically change the bargain after he has reaped the fruits of what he ostensibly was conveying. At the time that the plaintiff purchased this property he received attached to his deed a plat which correctly delineated and forcibly pictured the advantages of the situation. He bought with the north prong of Virginia Avenue open. He readily saw that this prong was the shortest distance from his property, not only to North Boulevard, but to the crosstown thoroughfare of Tenth Street. It is apparent to any one who examines the plat which is in the record, without knowing anything except as appears in the record, that the time consumed in reaching Tenth Street from the property purchased by the plaintiff and the distance to be traversed, if there had been no north prong at the time he purchased, would have been nearly, if not quite, double that which would have been required to go to Tenth Street by way of the north prong. Furthermore, it is very plain to the sight (though the writer has never physically seen the location) that if there were no intervening obstruction at the place where the north prong was open, one coming from the west along Tenth Street could much more readily find the property of the plaintiff than if he were required to go to the south prong. It would seem that if there were no natural obstruction, such a traveler could see the property of the plaintiff when he left Tenth Street to enter North Boulevard.

2. What we have already said practically rules on the second

contention of the defendants, that the plaintiff could claim no
right to the street known as the north prong, because his prop-
erty does not abut upon it. It is immaterial that the street in ques-
tion does not actually touch the plaintiff's property. *Adair* v.
*Spellman Seminary,* 13 *Ga. App.* 600, 606 (79 S. E. 589), citing
*Bayard* v. *Hargrove,* 45 *Ga.* 342; *Ford* v. *Harris,* 95 *Ga.* 97 (22
S. E. 144). In the *Adair* case, Pottle, J., quotes from 1 Elliott on
Roads and Streets (3d ed.), § 132, as follows: "It is not only
those who buy land or lots abutting on a street or road laid out
on a map or plat that have a right to insist upon the opening of
the street or road; but where streets and roads are marked on a
plat and lots are bought and sold with reference to the plat or
map, all who buy with reference to the general plan or scheme
disclosed by the plat or map acquire a right in all the public
ways designated thereon, and may enforce the dedication. The
plan or scheme indicated on the map or plat is regarded as a unity,
and it is presumed, as it well may be, that the public ways add
value to all the lots embraced in the general scheme or plan." So
far as the increased value conferred upon real estate by reason
of easy means of ingress and egress is concerned, there is no
difference in principle whether its accessibility arises from prox-
imity to an important thoroughfare upon which the property does
not abut, and the fact that it abuts thereon. In case a public high-
way, whether road or street, is abandoned, an abutting-land owner
owns an interest in the fee to the middle of the road or street; and
where he owns the land on both sides of a roadway which is
closed by law, owning except for public servitude the fee, he is
again entitled to possession and may entirely close the land for-
merly used by the public. That question, however, is not involved
in this case, because the defendants who seek to close the north
prong or fork of Virginia Avenue sold the plaintiff his land with
both prongs of that avenue open, and they are estopped to close
the north prong and add it to their land on each side in violation
of one of the most important implications of the contract evi-
denced by the deed. The abandonment of the north prong by the
public does not and can not affect the private rights arising out
of the contract evidenced by the deed which gave Walters an ease-
ment or right of way over the street as it was open at the time of
his purchase. As said by McCay, J., in *Bayard* v. *Hargrove,*

supra, "The purchasers of the lots acquired a contract right in the street. They acquired the right to use it themselves, and the right to have the street open to all others whom they may desire to use it. This title is gone from the owner, except with the consent of the public and the lot-owners. If the public were to forfeit or abandon it, this would not affect the rights of the lot-owners. The owner of the land has parted with his right ever to assert his right to the soil to the injury of the easement." See Central Trust Co. v. Hennen, 90 Fed. 593 (33 C. C. A. 189).

A vendor is estopped to claim any interest in land which at the time of his sale was represented as an easement which naturally contributed to the accessibility of the land being sold, and contributed to increase its value, regardless of the action of the authorities properly charged with the power to open and close public highways.

3. The third headnote requires no elaboration.

*Judgment affirmed. All the Justices concur, except Gilbert, J., who did not participate.*

HINES, J., concurs in the result.