### 21135. IRWIN v. DAILEY.

ARGUED JANUARY 10, 1961—DECIDED FEBRUARY 9, 1961—
REHEARING DENIED FEBRUARY 23, 1961 AND MARCH 9, 1961.

*Wm. G. Grant, Robert W. Spears,* for plaintiff in error.
*Reeves & Collier, Merrell C. Collier, Rex T. Reeves,* contra.

MOBLEY, Justice. ■ There is no merit in the contention of the defendant that the plaintiff cannot be permitted to prove that the lease and option were executed on the same day, on December 15, 1952, although the lease bears the date of October 1, 1952. The true date an instrument becomes effective may be shown to differ from the date shown in the instrument itself. *Russell v. Carr & Co.,* 38 Ga. 459 (1) ; *Waynesboro Planing Mill v. Perkins Mfg. Co.,* 35 Ga. App. 767 (134 S. E. 831) ; *Mutual Fertilizer Co. v. Henderson,* 18 Ga. App. 495 (89 S. E. 602) ; *Wiggins v. First Mutual Bldg. &c. Assn.,* 179 Ga. 618 (176 S. E. 636). The petition alleges that the letter dated December 15, 1952, and the lease dated October 1, 1952, were executed simultaneously on December 15, 1952, and were parts of a single agreement.

In their brief counsel for the defendant recognize the principle of law that a single contract may consist of, and be contained in, more than one document, and that, where this occurs, all of the writings which form the basis of the agreement must be considered and read together, and the legal effect accorded them as though they were contained in the same paper. However, they contend that the very language employed in the two

documents in this case shows that the letter and the lease agreement were not executed and delivered on the same day, as the petition alleges they were.

It can not be denied that the language employed in the letter dated December 15, 1952, furnishes a basis for the argument raised by the defendant. For example, the letter, addressed to the defendant, begins as follows: "You have a fifteen year lease on Hotel Hangar dated October 1st, 1952," and counsel argues that the use of the word *have* indicates that the lease was actually in existence on December 15, 1952. But it is to be noticed that the lease itself, which bears the date of October 1, 1952, begins: "W. L. Irwin *has* rented to J. P. Dailey building known as Hotel Hangar and Hotel Hangar Apartments," which, following the same argument of defendant's counsel, might indicate that Irwin had already leased the property to Dailey prior to October 1, 1952.

This court, from a mere reading of the language of the said letter, cannot hold as a matter of law that the letter and lease were not executed in the manner and at the time alleged in the petition. The plaintiff may lawfully allege and prove that a document bearing a particular date was not actually executed or delivered or otherwise made effective on the particular date shown therein. Whether the plaintiff's allegations as to the time of execution of the letter and the lease are true or false cannot be resolved as a matter of law from the language employed in those two documents.

■ The defendant contends that the option contained in the letter of December 15, 1952, is without any consideration and therefore unenforceable. The petition alleges that the lease agreement and the option letter were executed and delivered simultaneously, and the lease by its terms provides for the payment of a rental of $1,000.00 per month, while the letter provides that, upon exercise of the option, any rent paid under the lease will be credited against the purchase price set forth in the letter. As held above, this court cannot hold as a matter of law that the lease and the letter were not executed simultaneously. The agreement provides for the payment of rent, and the petition alleges that the rent was actually paid. This constitutes a sufficient consideration to support the entire contract as alleged.

*Walker v. Edmundson,* 111 Ga. 454 (36 S. E. 800); *Crawford v. Smith,* 151 Ga. 18 (105 S. E. 477); *Pope v. Read,* 152 Ga. 799 (111 S. E. 382); *Redmond v. Sinclair Refining Co.,* 204 Ga. 699 (51 S. E. 2d 409); 49 Am. Jur. 141, § 120.

■ The defendant further contends that the contract relied upon is too vague and indefinite to be enforced by a decree of specific performance because the property, both realty and personalty, is not sufficiently described therein. The agreement described the real property as follows: "This lease only covers ground on which the building is located with fifteen foot public alleys on East side, West side, and North side of said building and on South side or front of said building, that space between front of said building and Virginia Ave., and width of said building facing Virginia Ave., which represents 'Front Yard' of said building. (See attached diagram)." The "attached diagram" is reproduced below:

Counsel for the plaintiff contend that the option covers the land encompassed within the dotted lines, and the prayer is for a decree of title thereto and also a decree granting the plaintiff a perpetual easement in and right of use for alley purposes to the land encompassed within the area shown as "public drive" on said diagram.

Counsel for the defendant state in their brief that they do not contend the description of the real property is so uncertain and indefinite that either party could reasonably misunderstand its meaning, but they contend that the plaintiff is seeking to obtain a decree of title to more land than is called for under the agreement. The defendant contends that the agreement only covers "the Hangar Hotel and Hangar Hotel Apartments building and the ground on which the building is located, together with the area representing the front yard of the building."

"The description of land in a contract of sale is sufficiently definite where the premises are so described as to indicate the grantor's intention to sell a particular lot of land, and is capable of practical application to the land intended to be conveyed by introduction of extrinsic evidence. *King v. Brice*, 145 Ga. 65 (88 S. E. 960) ; *Dean v. Turner*, 151 Ga. 44 (105 S. E. 602)." *Lewis v. Trimble*, 151 Ga. 97 (2) (106 S. E. 101).

It is apparent from reading the agreement as a whole that the defendant intended to describe, and actually described, that area bounded by Virginia Avenue on the south and the public alleys on the west, north and east, as the subject matter of the lease and which the plaintiff was given an option to purchase. The "ground on which the building is located" is that ground which is bounded by Virginia Avenue and public alleys shown on the sketch attached to the agreement. As shown on the diagram, the building line actually adjoins the innermost limits of the public drives on the east, west, and north. Though the building structure does not completely cover all the land, it is entirely located on the lot of land which is completely enclosed within the lines formed by the innermost limits of the public drives and the north line of Virginia Avenue, as shown on the diagram which forms a part of the agreement. The description of land contained in the agreement is sufficiently definite to in-

dicate that the defendant intended to grant an option to purchase the area bounded by the public drives and the north line of Virginia Avenue, and such description can be applied to the subject matter of the instant case by the aid of extrinsic evidence in support of the further identification of the land as set out in the petition. *Dean v. Turner,* 151 Ga. 44 (105 S. E. 602).

■ In addition to a decree of title to the land mentioned in division 3 of this opinion above, the plaintiff prays for a decree granting him a perpetual easement and right of use in and to the public alleys shown on the diagram, and particularly described in the petition. It does not appear whether or not, at the time the agreement was executed by the parties, W. L. Irwin had title to the property embraced within the 15-foot public drives described in the agreement, nor does it appear whether such alleys were actually in existence at that time as public drives. However, "One who conveys a tract of land to another, with representations that such land has certain means of ingress and egress, is estopped thereafter to deny the existence of such easement, although such roadway may not be contiguous to the property purchased." *Ashford v. Walters,* 160 Ga. 350 (1) (127 S. E. 758). Likewise, where an owner contracts to sell a tract of land and covenants in such contract that the purchaser shall have certain means of ingress and egress, a court of equity, on the same principles which govern the granting of specific performance of any other contractual undertaking, may enforce such covenants in favor of the purchaser. 49 Am. Jur. 144, § 123.

In the instant case, the defendant gave the plaintiff an option to purchase the property "as described in said lease," which lease expressly refers to a 15-foot public alley as adjoining the property on the east, west, and north sides. As between the plaintiff and the defendant, the defendant would be estopped to deny the existence of said alleys and would be estopped to deny the plaintiff's right to use and enjoy the said 15-foot public alleys. We are not here adjudicating that the said alleys are public alleys, or easements or otherwise. What is here held is that the lessor granted the lessee the right of use of said 15-foot public alleys in the lease agreement, and also gave the

lessee the option to purchase that tract bounded by land which the defendant described as being public alleys. As between the parties the plaintiff is entitled to a decree enforcing such covenant as against the defendant.

■ The defendant contends that the description of the personal property contained in the agreement is too vague and indefinite to be the basis of a decree for specific performance, and cites *Gabrell v. Byers*, 178 Ga. 16 (172 S. E. 227), and *O'Rear v. Lamb*, 194 Ga. 455 (22 S. E. 2d 74), which are two cases where this court denied a decree for specific performance of certain alleged agreements involving personal property. Neither of those cases is controlling in the instant case, although this court recognizes the general principles of law contained therein. "As a general rule, equity will not decree specific performance of contracts relating to personal property. In order to sustain a bill for specific performance of such a contract, it is necessary to allege some good reason in equity and good conscience to take the case out of the general rule." *Gabrell v. Byers*, supra. The agreement in this case is entire. It involves both real and personal property, and stipulates one purchase price for the property as a whole. There is no price established for the personalty alone, or for the real estate. The entire agreement must be enforced with respect to both kinds of property, or it will fall.

The fact that real property is involved in the same contract and the fact that the purchaser would be unable to enforce the provisions respecting the realty independently of the provisions respecting the personalty clearly constitutes a good reason in equity and good conscience to authorize a decree covering the entire agreement. "When real property is involved in the same contract as personal property, the jurisdiction to grant specific performance of a contract in regard to the real property carries the right to give entire relief by specific performance of the contract in relation to the personal property, even though it might not, independently, be a proper subject for such relief." 49 Am. Jur. 150, § 126.

The defendant contends that the personal property is not sufficiently described to form the basis for a decree of specific per-

formance. The agreement granted the plaintiff the option to purchase the property "as described in said lease." The personal property so described is as follows: "All equipment in [Hotel Hangar] dining room except one iron safe. . . All furniture now in Hotel Hangar rooms and Hotel Hangar lobby . . . but W. L. Irwin is to remove from Hotel Hangar basement all furniture, one sink, filing cabinets, draperies, linens, etc. that is: everything except plumbing and heating in use and attached to building." It also was agreed that "all furniture, electric stoves, and electric refrigerators, pianos, etc. in apartments fifteen and sixteen except one electric refrigerator now in apartment fifteen" belonged to a third party and could be removed at any time. The contract, therefore, described *all* furniture in Hotel Hangar rooms, dining room, and Hotel Hangar lobby at the time of the execution of the agreement, except that which it was specifically provided could be removed. The petition alleges that in 1952 the plaintiff took possession of all the property described in the agreement and has been continuously in possession thereof since that time. Under the allegations of the petition, it is not necessary that the property be located and ascertained for the purpose of delivery to the plaintiff. The plaintiff alleges that he has possession of the property and has had possession thereof continuously since 1952, and that possession thereof was delivered to him by the defendant under their agreement. The agreement with respect to the personal property to be conveyed is not too vague and indefinite to form the basis of a decree for specific performance.

For the reasons given above, the trial court did not err in overruling the defendant's general demurrer to the petition.

*Judgment affirmed. All the Justices concur, except Duckworth C. J., and Grice, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The option depends upon the lease contract for a description of the land involved. That description can be fitted to the land described in the petition only by deletion of unambiguous and meaningful terms in the lease description. The petition seeks a decree of title to all lands embraced within a parallelogram measuring 190 feet x 265.5 feet. The description in the lease, after describing the

building, contains the following significant clause: "This lease *only covers ground on which the building is located.*" Can this understandable language be disregarded? The plat which is expressly made a part of the lease description shows vacant areas between the building, thus the ground on which the building is located, and the alleys on the east, north, and west sides of the building, which alleys touch the building at one point on each of said sides. Courts should not rewrite the contract the parties executed by adding land that the contract expressly excludes. Then on the south side the plat shows that the building faces Virginia Avenue slightly more than half the distance from the alley on the west to the alley on the east. The petition seeks title to all land facing Virginia Avenue, while the lease covers "that space between front of said building and Virginia Avenue, and width of said building facing Virginia Avenue which represents front yard of said building." The petitioner seeks, and the majority of this court sustains him, to get all the yard including the side yard, although to do so they ignore that the lease limits to "front yard," and to width of building facing Virginia Avenue.

I believe that to sustain the petition it is necessary to disregard the law which requires a clear meeting of minds as to the property involved (*Ga. S. & F. Ry. Co. v. Taylor*, 142 Ga. Ga. 350, 82 S. E. 1058; *Sykes v. Reeves*, 195 Ga. 587, 592, 24 S. E. 2d 688); and also the law requiring a definite and distinct description of the land involved (*Studer v. Seyer*, 69 Ga. 125; *Bullard v. Bullard*, 202 Ga. 769, 44 S. E. 2d 770; *Lance v. Crane*, 214 Ga. 284, 104 S. E. 2d 439). Surely the petitioner can not and will not say that only land on which the building is located as contained in the lease description includes vacant land surrounding the building, yet that is precisely what the decision means. Nor can the words of the lease "that space between front of said building and Virginia Avenue, and width of said building facing Virginia Avenue" be stretched to mean lands beyond the width of said building facing Virginia Avenue; yet the relief sought and the opinion allowing the same requires such stretching, which clearly changes the plain meaning of the words of the lease.

The petition describes the land to which the petitioner seeks title by a decree of specific performance of the option as follows: "Beginning at a point on the north side of Virginia Avenue, four hundred seventy six and seventy-five hundredths (475.75) feet west, along the north side of Virginia Avenue, from the corner formed by the north side of Virginia Avenue and the west side of Lang Avenue, with Lang Avenue measured as a forty (40) foot street, and running thence west, along the north side of Virginia Avenue, one hundred ninety (190) feet to a point; thence north, or almost north, in a direction parallel with the west side of Lang Avenue, with Lang Avenue measured as a forty (40) foot street, two hundred sixty five and five tenths (265.5) feet to a point; thence east, or almost east, in a direction parallel with the north side of Virginia Avenue, one hundred ninety (190) feet to a point, thence south or almost south, in a direction parallel with the west side of Lang Avenue measured as a forty (40) foot street, two hundred sixty-five and five tenths (265.5) feet to the north side of Virginia Avenue and the point of beginning."

It is seen that the land described in the petition is a parallelogram measuring 190 x 265.5 feet and all four sides are unbroken and are straight. It is impossible to fit this description into that contained in the option which the petition seeks to have specifically performed. It can be done only by ignoring and in effect erasing the descriptive words in the option, to wit: "this lease only covers ground on which the building is located"; also the words: "and on the south side or front of said building that space between front of said building and Virginia Avenue and width of said building facing Virginia Avenue"; and the diagram expressly made a part of the description which shows considerable vacant areas between the building and the alleys on the east, north and west sides, as well as a vacant area abutting on Virginia Avenue, but east of the portion of the building facing Virginia Avenue.

When parties express plainly in their written contract what they agree to, the courts should not deprive them of such rights by simply refusing to recognize such express terms. It is not possible to misunderstand such simple expressions as: "this lease

only covers the ground on which the building is located" and "that space between front of building and Virginia Avenue, and width of said building facing Virginia Avenue." These two expressions constitute the entire description of the land involved. The references to 15-foot alleys on the east, north, and west merely state, and the diagram indisputably shows them to constitute, the respective outside boundaries of the building for it abuts on each of the alleys. The plat is as follows:

The petition alleges that the petitioner took possession of the land described therein and made valuable improvements. This it is contended cured defects in the description. Reliance is made on *Deich v. Reeves,* 203 Ga. 596 (48 S. E. 2d 373). The fatal fallacy of such contention is two-fold: (1) the descrip-

tion here is perfect and is in no wise uncertain; and (2) in the cited case the description was merely "Beach Cottage, known as 1301 Butler Ave., and located on Section 3 of Beach Lot 83, Savannah Beach, Chatham County, Georgia." The opinion states that such description is merely a key by which the property could be located. The question was whether such description included more than the dwelling located thereon. Here the description answers that question by plainly saying it included only the land on which the building was located. That opinion cites *Wardlaw v. Wardlaw*, 185 Ga. 181 (194 S. E. 187), to support the ruling that the uncertainty, if it did exist, was made certain by possession with improvements. The proposition dealt with in those decisions is a stranger to the proposition here, where there can be no fair doubt or uncertainty as to the description. Trespassing on land clearly not leased in no possible manner can redound to the profit of the trespasser by giving him rights in land clearly not covered by the lease upon which he relies. These cases and those cited therein, as well as *Etheridge v. Gillen*, 199 Ga. 242 (34 S. E. 2d 105), all dealing with cases where the description was uncertain, ought not now be distorted to unjustly control in this case where the description is plain and unambiguous. The law and decisions of this court deserve to be spared such distortion and torture.

In similar fashion of misconstruction, *Horton v. Murden*, 117 Ga. 72 (3) (43 S. E. 786); *Mayor &c. of Gainesville v. Brenau College*, 150 Ga. 156 (103 S. E. 164); *Baggett v. Ga. Conference Assn. of Seventh Day Adventists*, 157 Ga. 488 (121 S. E. 838), are cited and relied upon. The most that any of those cases held was that, where the description referred to a building, it included the land upon which it was located and land adjacent thereto. The obvious reason such cases can not apply or control here is the provision in the description expressly limiting to only the land on which the building is located. None of those decisions holds that terms of the instrument can be ignored, as must be done here if the petition is sustained. The cited case of *Trustees of the Academy of Richmond County v. Bohler*, 80 Ga. 159 (7 S. E. 633), is so completely not relevant until discussion of it would be a waste of space.

Thus far I have assumed that the alleged option is valid and there was consideration for same, and have shown that, even in such event, no cause of action is alleged for the reasons given above. Now I think I can demonstrate that the option is a nudum pactum (See *Black v. Maddox*, 104 Ga. 157, 30 S. E. 723), and was not executed simultaneously with the lease, as the petition alleges, and as must be true if it is valid. The petition attaches as exhibit copy of the lease which is dated October 1, 1952, and in the body of that lease appears the following: "W. L. Irwin has rented to J. P. Dailey building known as Hotel Hangar and Hotel Hangar Apartments . . . for fifteen years beginning October 1st, 1952, and ending midnite September 30th, 1967, at a rental of One Thousand Dollars per month, payable in advance on first day of each month, beginning October 1st, 1952." There is simply no legal way in the absence of fraud or mutual mistake, and then by reformation in an action therefor, to alter or change these written provisions of the lease. Parol evidence for that purpose is inadmissible. Also attached is a copy of the alleged option, which is dated December 15, 1952, and recites that the lease is for fifteen years, as follows: "You have a fifteen year lease on Hotel Hangar dated October 1st, 1952." It must be admitted that the lease is for fifteen years ending "midnite September 30th, 1967," as recited in the lease. The petition does not deny the correctness of the date of the option letter which is Dec. 15, 1952, but it alleges that the lease was executed at that time. This allegation is flatly and completely refuted by recitals in the lease that it was for 15 years ending "midnite September 30th, 1967," which is 15 years from October 1, 1952, the date the lease bears and rental in advance is required therein to begin October 1, 1952. These naked facts refute on their face the allegation of simultaneous execution, and hence show the option to be utterly without consideration and void. To accept the allegation that the lease and option were executed December 15, 1952, would require an erasure from the lease of its requirement that the rent be paid in advance beginning on October 1, 1952. It would be impossible to comply with that provision of the lease. Then both the lease and the option positively state

that it shall be for 15 years, and this provision is impossible if it must terminate as therein provided at midnight on September 30, 1967. To retain the termination date written in the lease, and accept the allegation of the petition as to when it began, would change the lease from 15 years to 14 years 9½ months. The allegation of the petition, which its exhibits demonstrate to be incorrect, demands that courts seeking truth and justice reject such allegation and decide the merits of the petition in accord with the exhibits and the undeniable truth. *Vandiver v. Endicott,* 215 Ga. 250, 251 (109 S. E. 2d 775) ; *Strickland v. Lowry National Bank,* 140 Ga. 653 (2) (79 S. E. 539). In the *Strickland* case, it is stated in headnote 2 that, "where it was alleged by the plaintiff that the second note was collateral to the first, but the copies of the notes attached as exhibits showed on their face that this was not correct, but that the parties agreed that the first note should be held as collateral to the second, on demurrer the contract will be construed in accordance with its terms so appearing, and not in accordance with the interpretation alleged by the pleader." There being conflict between the written instrument and the pleadings, the instrument itself controls.

Having demonstrated as above that the lease was executed as it states on October 1, 1952, and the option was executed 2½ months thereafter, on December 15, 1952, the conclusion is demanded that the alleged option is utterly without consideration, hence is invalid. The case depending upon the invalid option must fail, and the demurrer should have been sustained.

GRICE, Justice, dissenting. I respectfully dissent from the majority, but I do not concur in all that is said in the dissenting opinion of the Chief Justice. My own views may be stated briefly. First, the description of the property in the contract sought to be established fails to comply with the rule that, in order to authorize specific performance, such description must be pleaded so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the subject matter. Second, the method by which the pleader seeks to establish such contract manifestly violates the parol evidence rule and thus does violence to what the parties themselves had agreed upon in writing. I would reverse the judgment.